UNION PACIFIC RAILROAD COMPANY, APPELLANT, v. W. L. STICKEL LUMBER COMPANY, APPELLEE.

FILED MARCH 18, 1916. No. 18453.

1. Carriers: FREIGHT CHARGES: LIABILITY. The mere acceptance from a carrier and removal of a shipment of goods, by one who is not the consignee named in the bill of lading, does not of itself create a primary obligation on the part of the one receiving such goods to pay charges beyond the amount stated and claimed by the carrier at the time of such acceptance and removal.

2. ——: ——: ——. In such case, where the failure by the carrier to collect the full amount of the freight charges, as fixed by the tariffs on file in the office of the interstate commerce com-

mission, is the fault of the carrier, it must first look to the consignor with whom it contracted to make such shipment, and who was also the consignee named in the bill of lading, for any balance due thereon.

APPEAL from the district court for Buffalo county: BRUNO O. HOSTETLER, JUDGE. *Affirmed*.

*Edson Rich, B. W. Scandrett* and *Thomas F. Hamer*, for appellant.

*N. P. McDonald, contra.*

FAWCETT, J.

This action was brought to recover a sum alleged to be due as a balance of the freight charges upon four shipments of lumber transported by plaintiff and connecting carriers from points in other states to points in Nebraska. Each of the four shipments is set out in the petition as a separate cause of action. The first cause of action, being barred by the statute of limitations, has been abandoned. The case was submitted to the district court upon an agreed statement of facts, and defendant recovered as to the other three causes of action. Plaintiff appeals.

The brief of plaintiff states that there is no substantial difference in the facts involved in the three causes under consideration, and that a statement of the facts in one will suffice for all. The second cause of action is therefore treated in the brief as the basis for the discussion of the whole case, and will be so treated by us. The motion for a new trial raised but one question, viz., whether the judgment of the court on the stipulated facts is correct, and that is the only question discussed here. It appears from the statement of facts that shortly prior to January 27, 1909, defendant purchased from the Falls City Lumber Company of Spokane, Washington, one car-load of white pine lumber, to be delivered by the Spokane company to defendant, at Elm Creek, Nebraska, at an agreed price; that at the time of the purchase the Spo-

kane company requested defendant to pay the amount charged by the railroad company for transportation of the lumber on its arrival at destination and deduct the charges so paid from the purchase price. On or about the date named, the Spokane company shipped the car from Troy, Idaho, *via* Silver Bow, Montana, to Elm Creek, but, instead of consigning it to defendant, it consigned it to itself, viz.: "Falls City Lumber Company, Elm Creek, Nebraska. Notify W. L. Stickel Lumber Company." The lumber was transported by plaintiff and the connecting carriers to Elm Creek, and on its arrival plaintiff presented to defendant a bill for the transportation charges, charging 46 cents per hundred pounds, for 50,500 pounds, amounting to $232.30, that amount and weight being the amount and weight shown and charged in the bill of lading and the freight bill presented by plaintiff to defendant. Thereupon defendant paid to plaintiff the sum named, being the full amount charged and claimed by plaintiff, and the lumber was then delivered to defendant. The weight of the lumber was correctly stated, but the tariffs, on file in the office of the interstate commerce commission, fixed the charge for the transportation of the car, by the route named, at the rate of 60 cents per hundred pounds, which would make the true amount, which plaintiff, under the federal law, would be compelled to charge for the shipment, $303. It is agreed that the tariffs and schedules fixing such rate had been published and filed with the interstate commerce commission, and were in full force and effect when the lumber was transported and delivered. Without knowledge that any larger freight rate than that charged in the freight bill and bill of lading was due to or claimed by plaintiff, defendant paid to the Spokane company, consignor, the full purchase price of the lumber, less the amount it had paid to plaintiff at the time of delivery. When, later on, plaintiff discovered the error which had been made in the rate charged, it demanded payment from defendant of the difference between 46 and 60 cents per

hundred.   Upon payment being refused, this action was instituted.

The argument of plaintiff is that under the law, as it existed at the time, there was but one charge which a carrier in interstate commerce could lawfully collect, viz., the one fixed by the tariffs on file with the interstate commerce commission.   This is conceded.   That it is not only the right, but the duty, of plaintiff to collect the difference between the amount paid and the legal rate must also be conceded.   The question here is: To whom must plaintiff first look for this balance?   It is contended by plaintiff that, when the lumber was delivered to defendant, plaintiff parted with the lien which it had upon the lumber for its lawful charges, which raised an obligation in the form of an implied promise on the part of defendant to pay the freight charges in full; not the charge made by the freight bill, which was an unlawful charge, but the charge fixed by the tariffs.   Cases are cited by plaintiff, and *Union P. R. Co. v. American Smelting & Refining Co.*, 202 Fed. 720, is liberally quoted from, to sustain its contention.   The decision in that case was in the circuit court of appeals, eighth circuit.   The opinion by Sanborn, J., is a strong and well-reasoned opinion, but the facts in that case and this are not the same.   In that case the defendant was the consignee named in the bill of lading.   The first paragraph of the syllabus shows that the bill of lading itself contained the stipulation, "The consignee or consignees paying freight."   The holding of the court was that an implied contract by the consignee to pay the freight under a bill of lading containing such a stipulation, or any similar provision, arises from the acceptance by the consignee of the delivery of the goods under the bill, because the consignee knows that the carrier looks to him for the charges, and by delivery waives its lien therefor in the faith that the consignee will pay them.   The difference between that case and the one at bar is this: In that case the goods were consigned to the defendant and contained the provision that the consignee

was to pay the freight; while in this case the lumber was not consigned to defendant, but was consigned by the Falls City Lumber Company to itself, and the bill of lading did not contain a stipulation that defendant was to pay the freight. Indeed, it made no reference to defendant as being in any manner liable for the payment thereof. The only reference to defendant contained in the bill of lading was, "Notify W. L. Stickel Lumber Company." There was nothing in this to indicate to plaintiff that defendant was the owner of the shipment, or in any manner interested in it except as agent for the consignee named in the bill of lading. We think, therefore, that the cited case is clearly distinguishable from the case at bar.

We have not overlooked *Texas & P. R. Co. v. Mugg,* 202 U. S. 242, and *Louisville & N. R. Co. v. Maxwell,* 237 U. S. 94. In the *Mugg* case the question involved was the right of the shipper of three car-loads of coal from Coal Hill, Arkansas, to Weatherford, Texas, at a rate previously quoted by the carrier, on which the shipper relied in contracting for the sale of the coal shipped, to compel delivery of the coal to the shipper at the point of destination upon payment of the quoted rate, which the carrier had, prior to the arrival of the coal at the point of destination, discovered was a lower rate than the interstate rate in effect at the time the shipment was made. The supreme court held that the shipper was not entitled to a delivery of the coal until payment of the interstate rate was made. The decision in that case was clearly right; but the case, it will be seen, deals only with the respective rights of the shipper and carrier. In the *Maxwell* case, Maxwell desired two round-trip passenger tickets from Nashville, Tennessee, to Salt Lake City, by one route, and a return by another. He purchased the tickets at the rate quoted, which proved to be $29.15 less, on each ticket, than the interstate rate, which it was conceded had been duly published and was in force at the time the tickets were purchased. Here, again, the case involved the rights of the original contracting parties, viz., the

passenger and the carrier.  A reading of the syllabus, and
of the opinion by Mr. Justice Hughes, shows that no other
question was considered.   The right of the carrier to
collect the interstate rate, as duly fixed and published,
was upheld.   We are in entire harmony with the holding
in these two cases; but they have no application to the
case at bar.   Here the right of the carrier to collect its
full rate is not questioned.   Nor would we question that
right in a case brought by the carrier against either the
consignor or consignee named in a bill of lading.   In
such a case both the consignor and consignee are parties
to the contract of shipment, and, while the original con-
tract may be between the carrier and the consignor, the
bill of lading itself would advise the carrier that the con-
signee named in the bill of lading is the one who is en-
titled to the possession of the goods covered by the ship-
ment; or, as stated in *Cornelius & Co. v. Central of Geor-
gia R. Co.,* 69 So. (Ala.) 331, the railroad company would
be "entitled to rely on the presumption that the consignee
is the owner of the shipment."   In the case at bar, defend-
ant, as already shown, was neither the consignor nor con-
signee named in the bill of lading.   There was nothing
in the bill of lading to warrant the carrier in indulging a
presumption that the title to the shipment had passed
to defendant.   So far as the record before us shows, the
only presumption that plaintiff was entitled to indulge
in this case was that the defendant would represent the
consignor, who was also the consignee, when the ship-
ment arrived at its destination.   This would imply
nothing more than that defendant in that respect would
act as agent for the consignee in receiving the goods.   We
do not think that in such a case the agent would incur a
primary liability for the payment of any freight beyond
the amount that was demanded at the time it acted for its
principal.   It probably must be conceded that under the
far-reaching scope of the act of congress the agent in such
a case might be held to have incurred a secondary liabil-
ity.   Whether so or not, a question which we are not now

called upon to decide, the duty of the plaintiff in this case is to first exhaust its remedy against the consignor and consignee before it can proceed against defendant. This holding is in no manner in conflict with the act of congress, or the holding of the supreme court of the United States in construing such act; nor will it do any injustice to the plaintiff, as it can as well pursue its remedy, primarily, against the consignor, with whom it contracted, as to pursue a third party with whom it had no contractual relations, either actual or constructive. There is nothing in the agreed statement of facts showing that defendant was the owner of the lumber, or to the effect that the words, "Notify W. L. Stickel Lumber Company," would warrant plaintiff in presuming that the defendant was the owner or the actual consignee; and for us to so hold would be to extend the liability of defendant by construction, in order to furnish a basis for reversing the judgment. This an appellate court will not do. Upon the contrary, it will indulge the presumption that the parties have deliberately put into their agreed statement of facts everything necessary to support their respective contentions.

In the firm belief that we are acting in entire harmony with the views and the reported holdings of the supreme court of the United States, the judgment is

AFFIRMED.

HAMER, J., not sitting.