ERNEST MEYER, APPELLEE, v. CHICAGO & NORTHWESTERN
RAILWAY COMPANY, APPELLANT.

FILED NOVEMBER 3, 1917. No. 19343.

Action: PARTIES: REAL PARTY IN INTEREST. The evidence examined,
and found not to sustain the verdict and judgment.

APPEAL from the district court for Douglas county:
CHARLES LESLIE, JUDGE. Reversed.

A. A. McLaughlin, Wymer Dressler and Lyle Hub-
bard, for appellant.

Weaver & Giller, contra.

HAMER, J.

This is an action against the Chicago & North West-
ern Railway Company to recover damages because of the
alleged negligence of the company in the management
and control of a car-load of potatoes shipped from Gor-
don, Nebraska, to N. H. Nelson of Omaha, Nebraska,
a broker, doing business in Omaha, and who appears to
have made an agreement with the plaintiff to deliver
him the car-load of potatoes "F. O. B. Omaha." The case
appears to have been tried before a justice of the peace,
who rendered judgment against the defendant. Then it

was taken to the district court for Douglas county by the defendant on appeal. The petition in the district court alleged that the railroad company undertook and agreed to carry the car-load of potatoes from Gordon, Nebraska, to Omaha, Nebraska; that the potatoes were delivered to the railroad company at Gordon, Nebraska, in good condition, and that on account of the negligence and carelessness of the defendant company in the management and control of the potatoes they were "negligently and carelessly permitted to become frozen." There was a trial to a jury, which found against the defendant, and judgment was rendered against it for $117.16.

It is contended by the defendant that the plaintiff, Ernest Meyer, was not the real party in interest. There was evidence before the court tending to show that the potatoes belonged to "The Fair" at Gordon, Nebraska, of which W. L. Mills was the proprietor, and that Nelson engaged the potatoes from "The Fair," and that he paid the freight, and that the potatoes were consigned to him. Nelson was doing business as a broker at Omaha. The evidence shows that he went to Meyer, the plaintiff, on the 7th or 8th of November, 1911, and said: "Meyer, I have got a wire from Gordon, Nebraska, offer Ohio potatoes 82½ cents delivery. Q. 82½ cents a bushel? A. Yes, sir; delivered. * * * Q. F. O. B. Omaha? A. F. O. B. Omaha." The foregoing is Nelson's testimony. The bill of lading is dated November 9, 1911. The consignor is shown by it to be "The Fair" at Gordon, Nebraska. The consignee is shown to be N. H. Nelson, Omaha, Nebraska. The bill of lading is signed by the agent of the railroad company at Gordon, and by "The Fair, per W. L. Mills." Nelson testified that the potatoes arrived at Omaha November 15. The next day Meyer went to the railroad yard and received the potatoes. Nelson went with Meyer (at his request) and showed him the potatoes. He testifies as follows: "Q. Who paid the freight? A. I paid the freight on the car. Q. Well, you may tell when you received that car.

A. According to my memory the car arrived here on the 15th. It was set for delivery on the 16th. * * * Q. And you paid the freight? A. Yes, sir. Q. And sold the car to the Meyer Fruit Company? A. Yes, sir." Mills testified that the potatoes were loaded in sacks; that he purchased them from Bert Hull; that the potatoes had been hauled from the Hull ranch to Gordon in wagons; that the distance was made about 8 or 10 miles; that November 8 and 9, 1911, were employed in hauling and loading the potatoes.

Nelson appears to have contracted for the potatoes with a view to selling them to Meyer. Meyer had indicated his willingness to buy the potatoes if Nelson could deliver them to him at Omaha for 82½ cents a bushel. · Nelson testified that he had sold a car to Meyer before the car arrived at Omaha; but an examination of his testimony shows that he had only orally engaged to sell them to Meyer, and that they had not yet arrived, and that nothing had been paid on them. Nelson testified that the paper marked "Exhibit 3" was the bill of lading, and that exhibit 2 was the expense bill, and that exhibit 1 was his bill against the Meyer Fruit Company, and that exhibit 3 was admitted, but there was an objection which was sustained as to the introduction of exhibits 1 and 2, which were held to be incompetent and immaterial. The former was a bill as follows:

"Omaha, Neb. 11-17-1911.
"E. Meyer Fruit Company,   Omaha, Nebraska.
    "Bought of N. H. Nelson & Co., Brokers.
"Terms                                   Car ARL-3624
"296 Sax 34260 potatoes at 82½ cents per bu. $471.07"

The material contents of the latter have been heretofore stated.

The evidence shows that Nelson was the purchaser of the potatoes, and that he did not disclose to the seller, Mills, the fact that he was buying the potatoes for any other person. Mills, who was the proprietor of "The Fair," did not know that Meyer was going to get the potatoes. The transaction of Nelson contemplated that

he was to be the consignee, and that he was the real owner of the potatoes until such time as he sold and delivered them to Meyer. He had not delivered them to Meyer at the time they arrived in Omaha, and he took Meyer and showed him the potatoes where they were in a car standing on the railroad track. If Mills had then seen fit to find fault with them and had refused to accept them, he could have done so. Meyer gave his check to Nelson for the price of the potatoes, but says that the price of other articles was included in the check and paid for at the same time. That would seem to show that Nelson was regarded as the owner of the potatoes both by Nelson and Meyer, and that Nelson sold them to Meyer after they arrived in Omaha. Nelson testified that he (Nelson) paid for the potatoes; also, that "he (Meyer) paid us in full for the car." Meyer testified: "Q. Do you know when you paid him (Nelson) for those potatoes? A. I could not say. I guess I paid in a few days, two or three days (from the time the potatoes arrived)." Meyer was notified by Nelson on the 15th of November that the potatoes had arrived. He (Meyer) unloaded them the next day. Meyer testified he did not pay for the potatoes until after he saw them.

While Nelson was a broker, he did not buy the potatoes from Mills as the agent of Meyer. The evidence does not show that Nelson was the agent of Meyer. The minds of Mills and Meyer never met, because they never saw each other and never communicated in any way. Nelson may have been morally bound to offer the potatoes to Meyer at 82½ cents a bushel, but he was not legally bound to do so. He could have sold them to any other proposed purchaser and such purchaser would have had a good title to them. Meyer paid no money on the potatoes before he received them, and then, after he had received them, some days after, he gave Nelson a check in payment of a balance due, and this check included other items of indebtedness due from Meyer to Nelson. Nelson could not have successfully maintained an action against Meyer for the price of the potatoes

until after he (Nelson) had delivered them. Neither could Meyer have successfully maintained an action of replevin for the potatoes against Nelson until after he (Meyer) paid for them. Meyer had no contract in writing with Nelson which obligated him (Nelson) to deliver the potatoes to Meyer. Nor had Meyer paid any money on the purchase price. The railway company could not have charged Meyer for the freight because he was not a party to the shipment. In the shipment of the potatoes the railway company did not know the plaintiff, Meyer. Meyer did not know the railway company. We are unable to say from the evidence that the potatoes were the property of the plaintiff at the time they were shipped from Gordon, and unless they were, or unless the claim for damages was assigned by Nelson to Meyer, we do not see our way clearly concerning the right of the plaintiff to maintain the action. The defendant railway company insists upon its legal rights and we cannot disregard them.

Section 7582, Rev. St. 1913, provides: "Every action must be prosecuted in the name of the real property in interest, except as otherwise provided in section twenty-six." In *Neimeyer Lumber Co. v. Burlington & M. R. R. Co.*, 54 Neb. 321, it was held: "If the contract between the parties expressly provides that delivery shall be made at a certain place, then the vendor's title to the property is not divested until delivery is so made." Nelson received the property at Gordon because he paid the freight upon it. In the arrangement which he made with Meyer, Meyer was to receive the property "F. O. B. Omaha." When Meyer received the property on the 16th of November, it was then delivered to him. This would make Nelson the owner of the property during the time of its transportation and until delivery to Meyer. Where the contract of purchase requires shipment and delivery of the goods at a designated place, the title does not vest in the purchaser until delivery at such place. *Neimeyer Lumber Co. v. Burlington & M. R. R. Co.*, 54 Neb. 321; Newmark, Law of Sales, sec.

166. See note to *Ramsey & Gore Mfg. Co. v. Kelsea,* 22 L. R. A. 415, 421 (55 N. J. Law, 320).

One who becomes the owner of goods by purchase from the consignee after transportation has ended cannot maintain an action against the carrier for damage to the goods in transit, in the absence of an assignment of such claim for damages from the consignee who was the owner during the transportation. *Union P. R. Co. v. Stickel Lumber Co.,* 99 Neb. 564.

We do not see that the plaintiff has proved a cause of action against defendant, and the judgment is therefore reversed and the cause remanded.

REVERSED.

ROSE, J., dissents.

SEDGWICK, J., dissenting.

In the majority opinion the difficult question involved in this case is not discussed. The case is determined entirely upon the question as to whether the plaintiff is the real party in interest. Nelson was a broker. Meyer was engaged in the retail business, in which he bought and sold potatoes. Nelson informed Meyer that he could get a car-load of potatoes at a certain price per bushel. Meyer told him he would take them. Nelson was not a dealer in potatoes. He ordered only the quantity wanted by Meyer, and ordered them in his (Nelson's) name. They were shipped in Nelson's name, and when they arrived Meyer took the whole order and paid Nelson the agreed price, and found that the potatoes were frozen. The real party in interest is the one who would suffer a loss by reason of the freezing of the potatoes. If Meyer agreed that Nelson should procure the potatoes for him, and Nelson did so, and Meyer furnished the money for them, Meyer is the one who suffered the loss. On the other hand, if Meyer had agreed that if Nelson would order the potatoes and get them there he would buy them from Nelson if they were in good condition, then if the potatoes were frozen Meyer would not be liable to Nelson and should not have received the pota-

toes. Neither of the parties so understood the transaction. Nelson as a broker assumed that he ordered the potatoes for Meyer, as they agreed he should, and they both understood that Meyer must take them, which he did. Even if their contract had not been plainly definite that Nelson as a broker was ordering the potatoes for Meyer, still if Nelson had so understood it, and insisted that Meyer take them as purchased for him, and Meyer had acquiesced and taken the potatoes and paid in full the original purchase price, the jury upon such evidence might find that Meyer was damaged by the freezing of the potatoes. Meyer evidently was not a very tactful witness and not very well posted in these nice questions of law, and his testimony is somewhat childlike, but if Nelson had brought this action instead of Meyer the jury might have found upon this evidence that he was not the real party in interest. Meyer has paid the full purchase price of the potatoes, so that Nelson has neither lost anything nor is he in danger of losing by the freezing of the potatoes. He could not recover any damages for he has suffered none. Meyer although paying for sound potatoes, has received frozen ones. He is greatly damaged. If the defendant negligently caused these damages, Meyer should recover in this case. The question as to whether Meyer was the real party in interest was submitted to the jury by an instruction of the court, in which the court told the jury that unless Meyer owned the potatoes he could not recover. The jury found upon that issue under this evidence that Meyer could recover. It seems very clear that this evidence supports the finding that Meyer is the real party in interest. No one but Meyer can recover, and this decision frees the defendant from liability without considering whether or not its negligence caused the damage.