CHICAGO GREAT WESTERN RAILROAD COMPANY v. LOUIS M. SCHMIT AND ANOTHER.[1]

May 8, 1925.

No. 24,540.

**Purchaser of goods in interstate transit liable to carrier for amount of undercharge, though not named in bill of lading.**

A common carrier must collect the amount of an undercharge on an interstate shipment from one legally liable; and under the facts of this case the defendants, who bought merchandise then in the course of transportation, to be delivered, agreed to pay and paid the freight charges as a part of the purchase price, accepted the shipment, and an undercharge was made, are liable to the carrier therefor though they were not named consignees in the bill of lading.

1. See Carriers, 10 C. J. p. 447, § 704 (1926 Anno); p. 510, § 825; p. 511, §§ 825, 827.

Action in the district court for Ramsey county. The case was tried upon stipulated facts before R. D. O'Brien, J., who ordered judgment for plaintiff. Defendants appealed. Affirmed.

*Lamberton, Lamberton & Murphy,* for appellants.

*Briggs, Weyl & Briggs,* for respondent.

[1]Reported in 203 N. W. 618.

DIBELL, J.

Action to recover the difference between the lawful freight charges on an interstate shipment and the charges paid by the defendant. There was judgment for the plaintiff and the defendants appeal.

The case was tried on stipulated facts, not a part of the record, upon which the court made findings of fact and conclusions of law directing judgment in favor of the plaintiff for the amount of the undercharge. If the judgment can be sustained on any reasonable interpretation of the facts found it must be affirmed.

The plaintiff was the carrier from Des Moines, Iowa, to points in Minnesota. The course of the shipment is shown in paragraphs 2 and 3 of the court's findings:

"2. That on or about the 8th day of July, 1920, a carload of 62 barrels of feeding molasses weighing 43,800 pounds, loaded in car C. C. & O. 3545, was shipped to the Anchor Feed & Milling Company from Mobile, Alabama to Des Moines, Iowa, and that thereafter, on or about the 19th day of July, 1920, the Anchor Feed & Milling Company reconsigned said car C. C. & O. 3545 loaded as aforesaid to its order at St. Charles, Minnesota, notify U. B. Rogers, at St. Charles, Minnesota; that said U. B. Rogers was the agent of said Anchor Feed & Milling Company.

"3. That on July 28th, 1920, the said car arrived at St. Charles, Minnesota, the destination named in the bill of lading. That at that time the agent of the plaintiff at St. Charles, Minnesota, was requested by said U. B. Rogers to forward said car to Altura Elevator Company at Altura, Minnesota, said car of molasses having been sold by said Anchor Feed & Milling Company to said Altura Elevator Company; a notation was made upon the bill of lading and the car was forwarded to said Altura Elevator Company at Altura, Minnesota; that later the agent of the plaintiff at Altura, Minnesota, called the Altura Elevator Company and asked what disposition it wanted made of the car and was requested by said Altura Elevator Company to forward said car to the Altura Elevator Company at Rollingstone, Minnesota; that an additional notation was made on the bill of lading and the car was forwarded to

Altura Elevator Company at Rollingstone, Minnesota. That said carload of molasses was purchased by the defendants from said Altura Elevator Company at the agreed price of $62.00 per ton delivered at Rollingstone, Minnesota; that the defendants were instructed by said Altura Elevator Company to pay the freight charges on said car of molasses when the same arrived and deduct the amount so paid from the purchase price of said molasses; that thereafter and on or about August 4, 1920, said car of molasses billed to Altura Elevator Company arrived at Rollingstone, Minnesota, and that the same was unloaded by defendants after the payment to the plaintiff herein for the said Altura Elevator Company of the freight charges thereon, amounting to two hundred ten and 22/100 dollars ($210.22) and that the agent of the plaintiff made and delivered a receipt therefor showing that payment of said money had been made by Altura Elevator Company; that thereafter the defendants paid the purchase price in full of said molasses of $62.00 per ton after deducting the said freight charges of two hundred ten and 22/100 dollars ($210.22) as directed by said Altura Elevator Company; that the plaintiff's agent erroneously stated the freight charges on said shipment was $210.22 whereas, by the duly published schedule rates the amount was $262.00."

The interstate commerce statute intends to prevent discrimination. That is its definite policy. The published rate is the only rate. The carrier is required to recover the amount of an undercharge from one liable. Louisville & N. R. Co. v. Central Iron & Coal Co. 265 U. S. 59, 44 Sup. Ct. 441, 68 L. ed. 900, and cases cited; U. S. Comp. St. § 8604 dd; U. S. Comp. St. 1923 Supp. § 8565.

The defendants were the owners of the merchandise. If they had been the named consignees, their liability would not be questioned. In all but name they were the consignees. They had bought the merchandise to be delivered at Rollingstone. They were to pay the freight as a part of the price. They paid the amount demanded, accepted the merchandise and the carrier surrendered its lien.

In New York Cent. & H. R. R. Co. v. York & Whitney Co. 256 U. S. 406, 41 Sup. Ct. 509, 65 L. ed. 1016, the consignee, a commission company, paid the freight demanded and was held liable for

the amount of an undercharge. The bill of lading did not come into the consignee's possession and it had no knowledge of its issuance or terms. The state court held that whether the commission company agreed to pay the rates imposed by law was a question of fact and it accepted the finding of a jury that it did not. The Supreme Court of the United States, holding the question one of law, said:

"The transaction between the parties amounted to an assumption by the consignee to pay the only lawful rate it had the right to pay or the carrier the right to charge. The consignee could not escape the liability imposed by law through any contract with the carrier."

In Pittsburgh, C. C. & St. L. Ry. Co. v. Fink, 250 U. S. 577, 40 Sup. Ct. 27, 63 L. ed. 1151, similar language was used; and it was there held that the obligation to pay was none the less because the consignee did not become the owner until delivery.

The case of Union Pac. R. Co. v. W. L. Stickel Lbr. Co. 99 Neb. 564, 156 N. W. 1082, is well considered and quite in point for the defendants. But we reach the conclusion that the principle stated in the York & Whitney case and the cases therein cited is controlling. The defendants owned the property, they could not have it without payment of lawful charges, and they undertook to pay them. We do not construe the finding to be that they were merely agents of the Altura Company in making payment. Probably we may assume that they had the bill of lading when they paid. They were owners and assumed the position of consignees. That the receipt ran to the Altura Company is not of particular significance.

In addition to the cases cited we note Union Pac. R. Co. v. American S. & R. Co. 202 F. 720, 121 C. C. A. 182; Western & Atl. R. Co. v. Underwood (D. C.) 281 F. 891; G. N. Ry. Co. v. Hyder (D. C.) 279 F. 783; Pennsylvania R. Co. v. Titus, 216 N. Y. 17, 109 N. E. 857, L. R. A. 1916E, 1127, Ann. Cas. 1917C, 862. In Louisville & N. R. Co. v. Central Iron & Coal Co. 265 U. S. 59, 44 Sup. Ct. 441, 68 L. ed. 900, is a recent discussion of liability for the difference between the published tariff and the undercharge. And see New York Cent. R. Co. v. Sharp, 124 Misc. 265, 206 N. Y. Supp. 755. We note our recent cases, C. M. & St. P. Ry. Co. v. Greenberg, 139 Minn. 428, 166 N. W. 1073; Chicago J. Ry. Co. v. Duluth Log Co. 161 Minn. 466, 202 N. W. 24.

Judgment affirmed.