Case v. Union Pac. Rld. Co.

No. 25,945.

A. I. CASE, *Appellee*, v. THE UNION PACIFIC RAILROAD COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. CARRIERS—*Damage to Goods—Evidence—Intrastate Shipments—Attorney's Fee.* In an action to recover damages from a railroad company for injury to a shipment of plums, *held*: (*a*) There was no prejudicial error in the admission of evidence. (*b*) The evidence of plaintiff's demand upon defendant for damages was sufficient. (*c*) The damages occurred in an intrastate shipment. (*d*) The amount of an attorney's fee allowed was not unreasonable.

2. SAME—*Freight Charges—Persons Liable.* A common carrier must collect the amount of an undercharge on an interstate shipment from one legally liable, and, under the facts detailed in the opinion, one who bought merchandise in the course of transportation to be delivered, and who accepted the shipment and paid the charges, was liable to the carrier for an undercharge, though not named as consignee in the bill of lading.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed December 5, 1925. Affirmed in part and reversed in part.

*T. M. Lillard, Bruce Hurd, O. B. Eidson,* all of Topeka, and *A. L. Berger,* of Kansas City, for the appellant.

*William K. Ward* and *Grant W. Harrington,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

.HOPKINS, J.: The chief questions this case presents are whether or not damages to a shipment of plums (prunes) occurred in interstate commerce, and whether one who, in his own right, receives merchandise at destination, though not named as consignee, is liable for undercharges thereon.

A carload shipment of fresh blue plums originated at Milton, Ore., destination, Plainville, Kan. Upon its arrival at Plainville plaintiff paid the freight. The car was opened and 184 boxes taken therefrom. Plaintiff then requested balance of the shipment be transported to Morland—a distance of forty-six miles. The plaintiff and defendant's agent at Plainville inspected and counted the remaining 1,013 boxes, found them to be securely and properly packed, and the fruit in sound condition. Defendant's agent accepted the shipment, re-iced the car, and issued bill of lading cover-

1. Carriers, 10 C. J. § 614; Appeal and Error, 4 C. J. § 2970; Commerce, 12 C. J. § 24.   2. Id., 10 C. J. § 703; 49 L. R. A., n. s., 92; 24 A. L. R. 1163; 4 R. C. L. 857.

ing the movement from Plainville to Morland. The shipment was delivered by defendant at Morland the following day (September 15, 1920). When the car was opened at Morland it was found that a number of boxes had been moved or thrown from their former position. Boxes were broken and the fruit scattered over the floor of the car. A portion of the consignment was unloaded at Morland, the car then shipped to Bogue, part of the remainder unloaded, and the balance shipped to Hill City. Action for $287.82 damages was filed in the city court of Kansas City, where a default judgment was obtained, and defendant appealed to the district court. Trial there resulted in judgment for plaintiff for $95 and $70 attorney's fees. Defendant filed a cross petition in three counts seeking to recover undercharges for freight and refrigeration connected with other shipments. A demurrer by the plaintiff to defendant's evidence in support of its counterclaim was sustained. The defendant appeals, contending, first, that the court erred in the admission of evidence tending to show the condition of the fruit at Hill City, whereas, plaintiff's bill of particulars claimed damages only on account of alleged mishandling of the fruit between Plainville and Morland. It appears from the testimony that when that part of the shipment which was unloaded at Morland was examined, not all of the boxes of fruit were inspected. The lower tiers were not taken out of the car. The plaintiff contends that the damage first discovered at Morland was more fully disclosed on complete examination of the balance of the boxes of fruit as they were reached and unloaded at Bogue and Hill City. It is obvious that the exact condition of the fruit in the lower tier of boxes could not be ascertained until the entire load had been removed—until the boxes on the bottom could be examined. This was not accomplished until the final unloading at Hill City. It is apparent, however, that the jury entirely ignored or failed to consider the evidence of losses sustained on the boxes of fruit removed either at Bogue or Hill City. It found plaintiff's loss on the ship-ment to be $95, whereas plaintiff claimed and introduced evidence to show that his loss at Morland was $287. Under the circumstances, the defendant was not prejudiced.

The defendant contends that plaintiff was not entitled to attorney's fees because the shipment was interstate, and because no demand was made. Also that the amount of the fee allowed was excessive. The original shipment moved from Milton, Ore., to Plainville. The defendant there received its freight charges, plaintiff

surrendered the bill of lading and accepted the shipment. Thereafter, not being able to dispose of the entire carload at Plainville, he asked to have the shipment transported first to Morland and then to Bogue and Hill City—points on defendant's line and within the state. The defendant accepted the shipment to the latter points from Plainville under a new bill of lading. Under the circumstances, the shipment from Plainville to Morland was not interstate. There was evidence showing that the plaintiff filed a written claim or demand with defendant's agent at Plainville, December 20, 1920. The court refused to admit in evidence what purported to be the demand or a copy thereof. The evidence, however, was sufficient. It showed defendant had received the demand. (R. S. 66-304, 66-305, 66-306.) Nor was an attorney's fee of $70 unreasonable. (See *Baalmann v. Union Pac. Rld. Co.*, 118 Kan. 540, 235 Pac. 1062; *The People v. Supervisors of Delaware Co.*, 45 N. Y. 196; *C. & N. W. Ry. v. Nye, etc., Co.*, 260 U. S. 35, 67 L. Ed. 115.)

Defendant, in its cross action, sought to recover uncollected balances of freight and refrigeration charges. Three shipments were involved, one, of peaches consigned by the United Fruit Company, Paonia, Colo., to the Cochrane Brokerage Company, Pueblo, Colo. It was diverted to Morland, Kan., consigned to the Cochrane Brokerage Company. The Cochrane Brokerage Company directed defendant's agent at Morland to deliver the shipment to the plaintiff. Plaintiff received it and paid the charges. A second shipment was by the United Fruit Company, consigned from Paonia, Colo., to the Cochrane Brokerage Company, Pueblo. It was diverted to Plainville, consigned to the Cochrane Brokerage Company. That company directed defendant's agent at Plainville to deliver it to the McPherson Produce Company. The McPherson Produce Company directed delivery to plaintiff. Plaintiff received it and paid the charges. A third, was a shipment of potatoes from Minnesota, consigned to the Salina Produce Company, Junction City, Kan. Defendant's agent at Junction City was directed to divert the shipment to Demar to the Salina Produce Company, where, under directions, it was delivered to the plaintiff, who paid the charges. There were undercharges on all three shipments which the carrier was in duty bound to collect.

It is a matter of common practice for carload shipments of produce to be sold several times while in transit. A shipment is often diverted to some other destination than the one originally specified

in the bill of lading, sometimes by telegram while en route. Produce men, middlemen and brokers pass the charges down on the shipment to the last merchant or broker handling it. Such was the situation with the shipments under consideration. Plaintiff contends that he was not liable for the undercharges because not named as consignee. While we do not regard his contention as embodying the better rule and sounder reason, there is substantial authority supporting his position.

In *Union P. R. Co. v. Stickel Lumber Co.*, 99 Neb. 564, it was said:

"The mere acceptance from a carrier and removal of a shipment of goods, by one who is not the consignee named in the bill of lading, does not of itself create a primary obligation on the part of the one receiving such goods to pay charges beyond the amount stated and claimed by the carrier at the time of such acceptance and removal." (Syl. ¶ 1.)

Other cases supporting plaintiff's contention are: *Davis v. Akron Feed & Fuel Co.*, 296 Fed. 675; *Penna. R. R. Co. v. Townsend*, 90 N. J. Law, 75; *New York Cent. R. Co. v. Sharp*, 206 N. Y. S. 755.

If the plaintiff had been named as consignee his liability would not be questioned. A consignee is one to whom a consignment is made (Bouvier's Law Dictionary). He is one to whom goods are consigned, shipped or otherwise transmitted. (*Powell v. Wallace*, 44 Kan. 656, 25 Pac. 42; 8 Cyc. 587; 6 Cyc. 501; 12 C. J. 527.) The plaintiff, acting in his own right, received the shipment and paid the charges demanded. The merchandise was transmitted to him, and although he lacked the designation or name of consignee, he became consignee in fact. If the defendant had demanded the full amount of the legal tariff at the time of the delivery of the merchandise to him he would have paid it. Had it mistakenly demanded more, he could have paid it and recovered back the overcharge. (*Railway Co. v. Albers*, 79 Kan. 59, 99 Pac. 819.) The Cochrane Brokerage Company, consignee at Pueblo, upon diverting the shipments became so far as plaintiff was concerned, for all practical purposes, the consignor, and plaintiff, at Morland and Plainville, the consignee. The defendant contends that plaintiff signed a receipt acknowledging himself as new consignee, while plaintiff claims he was required to sign on the "dotted line" over the word "consignee." We attach little significance to this detail of the controversy, but it is apparent that plaintiff assumed the position of the consignee. The rights of the consignee were transmitted to him. If he was merely the assignee of the consignee the same result necessarily obtained.

The assignee of a bill of lading, who receives the goods, thereby becomes bound to pay the charges of transportation. (10 C. J. 447.)

In *Railway Co. v. Wagner,* 102 Kan. 817, 172 Pac. 519, it was said:

"Where an interstate bill of lading contains any provision authorizing the consignee to pay the freight, an implied contract by the consignee to pay the freight charges arises from his acceptance of the delivery of the goods under the bill, into which contract there will be read the provisions of the Elkins act requiring payment of the full charges in compliance with the duly established rate; and where the consignee pays the charges demanded, which are less than the established rate, the carrier may maintain an action against him for the unpaid balance of the legal charges." (Syl. ¶ 1. See, also, *Railway Co. v. Stannard & Co.,* 99 Kan. 720, 162 Pac. 1176.)

In 2 Hutchinson on Carriers, 3d ed., § 808, it is said:

"But if the consignee assigns the bill of lading before the goods are delivered to him, and thus enables his indorsee to receive them, he does not become liable for the freight unless his indorsee received them as his agent. The ordinary contract of the carrier is to deliver the goods to the consignee or his assigns, 'he or they paying freight,' and whoever accepts them under such a contract becomes liable for the freight; and if the carrier delivers them to an assignee of the contract, without relying upon his lien to secure its payment, he must be understood as relying upon the personal liability of the assignee alone, if the assignee does not act as the agent of the assignor. A new contract arises, under such circumstances, between the assignee and the carrier."

In the recent case of *Chicago Great Western R. Co. v. Schmit,* 203 N. W. 618 (Minn.), it was said in the syllabus:

"A common carrier must collect the amount of an undercharge on an interstate shipment from one legally liable, and under the facts of this case the defendants, who bought merchandise then in the course of transportation, to be delivered, agreed to pay and paid the freight charges as a part of the purchase price, accepted the shipment, and an undercharge was made, are liable to the carrier therefor, though they were not named consignees in the bill of lading."

In *Pittsburgh & C. Ry. Co. v. Fink,* 250 U. S. 577, 63 L. Ed. 1151, it was held that the obligation to pay was none the less because the consignee did not become the owner until delivery.

In *N. Y. Cent. R. R. v. York & Whitney Co.,* 256 U. S. 406, it was said in the opinion:

"The railroad company as terminal carrier sued York & Whitney Company, a commission merchant, to recover the balance claimed for freight and refrigeration on nine carloads of melons, vegetables and fruit consigned to the latter, subject to lawful charges, and delivered at Boston during the years

Case v. Union Pac. Rld. Co.

1911 and 1912. They were shipped in interstate commerce upon straight bills of lading approved as to form by the Interstate Commerce Commission, but none of these came into the consignee's possession and it had no knowledge of their issuance or terms. When York & Whitney Company accepted the cars it paid all charges claimed, the merchandise was sold at once and the net proceeds remitted to the shippers. Later the railroad company discovered that it had collected less than lawful rates established under the Interstate Commerce Act (24 Stat. 279), and thereupon demanded the balance alleged to be due by reason of such undercharges. Maintaining it had accepted the shipments upon the understanding that the charges were as reported, and had not agreed to pay more, York & Whitney Company refused the demand. Commission merchants often receive from strangers shipments of perishable articles for sale at market prices. Under a trade custom such things are promptly disposed of and the net proceeds remitted to the consignors. Successful conduct of the business requires prompt settlements. The court below held that whether York & Whitney Company impliedly agreed to pay the rates imposed by law was a question of fact to be determined upon consideration of all the circumstances. It accordingly approved a judgment, entered upon a verdict, favorable to that company as to charges upon one carload (No. 280), and in behalf of the railroad for those claimed on account of eight carloads (No. 281). We think the doctrine announced in *Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v. Fink,* 250 U. S. 577, 40 Sup. Ct. 27, 63 L. Ed. 1151 (Nov. 10, 1919), is controlling, and that the liability of York & Whitney Company was a question of law. The transaction between the parties amounted to an assumption by the consignee to pay the only lawful rate it had the right to pay or the carrier the right to charge. The consignee could not escape the liability imposed by law through any contract with the carrier." (p. 407.)

In *Pittsburgh & C. Ry. Co. v. Fink,* supra, it was said in the opinion:

"Examination shows some conflict of authority as to the liability at common law of the consignee to pay freight charges under the circumstances here shown. The weight of authority seems to be that the consignee is *prima facie* liable for the payment of the freight charges when he accepts the goods from the carrier." (p. 580.)

In *Galveston H. & S. A. Ry. Co. v. Lykes Bros.,* 294 Fed. 968, 974, it was said in the opinion:

"The same statement was later made by the supreme court in the case of *Pittsburgh v. Fink,* supra, the court saying: 'The weight of authority seems to be that the consignee is *prima facie* liable for the payment of the freight charges when he accepts the goods from the carrier.' In this case the defendants became undoubtedly liable for the freight, and all the legally due freight, when they accepted the goods. The railroad company had the right to demand and collect it from them."

In *Great Northern Ry. Co. v. Hyder*, 279 Fed. 783, it was held:

"A consignee, who is not at any time the owner of goods shipped, who has not agreed with either the shipper or the carrier that he will pay the freight, and who accepts the goods on the carrier's mistaken representation that the freight has been prepaid, is bound by such acceptance to pay the freight; shipper, carrier, and consignee all being agents and trustees for the public in the matter of the enforcement of freight rates." (Syl.)

In *Western & Atlantic R. Co. v. Underwood*, 281 Fed. 891, it was held:

"A consignee cannot accept delivery of an interstate shipment of goods without incurring liability for the carrier's lawful charges, known or unknown, supposed to be prepaid or otherwise, and no matter what the consignee's actual relation to the shipper is." (See, also, *L. & N. R. R. Co. v. Central Iron Co.*, 265 U. S. 59, 68 L. Ed. 900; *Louisville & Nashville R. R. v. U. S.*, 267 U. S. 395, 69 L. Ed. 285; Note, 24 A. L. R. 1168; *Pennsylvania R. R. Co. v. Titus*, 216 N. Y. 17, L. R. A. 1916E, 1127; 6 Cyc. 501; 10 C. J. 447; *Southern Ry. Co. v. Collins*, 127 S. C. 219; *Waters v. Pfister & Vogel L. Co.*, 176 Wis. 16; *American Ry. Ex. Co. v. Mohawk Dairy Co.*, 250 Mass. 1; *Missouri Pac. R. Co. v. Pfeiffer Stone Co.*, 166 Ark, 226; *N. Y. C. R. R. Co. v. Ross Lumber Co.*, 234 N. Y. 261, A. L. R. 1160.)

We conclude that the defendant should recover the three items in its cross petition.

The judgment is affirmed in so far as it covered damages and attorney's fees, and is reversed in so far as it covered undercharges set out in defendant's cross petition. The cause is remanded with directions to enter judgment accordingly.