**Indiana Harbor Belt Railroad Company, Appellant, v. Moses M. Lieberman et al., trading as Joseph L. Lieberman Iron Company, Appellees.**

## Gen. No. 31,702.

1. CARRIERS—*presumption of carrier's possession of goods.* In an action to recover freight and demurrage charges, proof that the railway had the goods at a certain date and sold them at a later date raises a presumption that it had possession thereof in the interval.

2. CARRIERS—*liability of shipper's vendee for charges.* In an action to recover freight and demurrage charges, proof that the shipper's vendees guaranteed "all transportation charges" shows they intended to assume responsibility for all such charges under the bill of lading, and acceptance of the freight and reconsigning it made them liable for such charges as consignees.

3. CARRIERS—*reconsigning shipment as acceptance.* In an action to recover freight and demurrage charges, proof that defendants exercised control of the shipment by ordering it reconsigned necessarily implied their acceptance thereof.

Appeal by plaintiff from the Municipal Court of Chicago; the Hon. SAMUEL H. TRUDE, Judge, presiding. Heard in the second division of this court for the first district at the March term, 1927. Reversed with findings of fact and judgment here. Opinion filed October 4, 1927.

GLENNON, CARY, WALKER & MURRAY, for appellant; L. BEERS-JONES, of counsel.

BENJAMIN B. MORRIS, for appellees.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

This is an appeal from a judgment for costs against plaintiff in an action to recover a balance of $212.82 for freight and damage charges accruing for an interstate shipment of scrap iron, after deducting $69.40 realized from the sale of the iron after defendants' refusal to pay such charges.

The shipment was under a uniform bill of lading, dated June 9, 1920, from Circleville, Ohio, to East Chicago, Indiana, designating J. Krakowitz as shipper to Republic Iron & Steel Company, and routing for delivery by plaintiff.

By letter of June 16 defendants requested plaintiff to have the car diverted to the Interstate Iron & Steel Company, at the same destination, saying therein "charges following," and promising the original bill of lading as soon as received. The same day defendants wrote the agent of the initial carrier to have the

bill of lading corrected for reconsignment to the Interstate Iron & Steel Company, giving the same destination and delivery, saying they had purchased the car and when seller sent defendants the original bill of lading it would be able to surrender the same. In another letter to plaintiff of June 23 "confirming conversation" had that day with one of plaintiff's representatives with reference to the car, which was referred to therein as "now refused by the Republic Iron & Steel Company on your rails at East Chicago, Ind.," defendants stated "it is understood you will have this car reassigned to the Interstate Iron & Steel Company, East Chicago, Ind., IHBelt Delivery, and *allow all charges to follow.  *  *  *  and we hereby* agree to guarantee you against any loss due to our inability to surrender at this time the original bill of lading.  *  *  *  and will also guarantee payment of *all transportation charges.  *  *  *  Kindly acknowl-* edge receipt of these *instructions."*  (Italics ours.) This letter was acknowledged by plaintiff's letter of June 23, saying the car had been "ordered diverted to the Interstate Iron & Steel Company, East Chicago, Ind., all charges to follow, as per your request."

The latter company also rejected the shipment and so notified plaintiff on July 7. Referring to the rejection in a letter of July 12, defendants advised plaintiff "to notify and accept dispositions orders from J. Krakowitz,  *  *  *  collecting all demurrage and freight charges."

Plaintiff held the car, as the proof tends to show, until August 26, when the scrap iron was sold for $69.40, at the best offer plaintiff was able to secure.

The legal car rate from point of shipment to ultimate destination was $78.28, the demurrage under the national car demurrage rules, from July 8 (date of defendants' refusal) to August 26 (the date of sale), $198, and the war tax $5.94, a total of $282.22. Credit-

ing the $69.40 realized from the sale defendants were sued for the balance of $212.82.

No witnesses were offered by defendants.

The above state of facts is not questioned except as to the period for which demurrage was chargeable, there being no express proof of plaintiff's possession of the car between August 2 and August 26. But in view of plaintiff's unquestioned possession after said refusal up to August 2, and likewise on the date of sale, we think the proof raises a presumption of plaintiff's continuance of possession during that interval. (Vol. 1, sec. 41, Greenleaf on Evidence; *Choisser v. People ex rel. Rude,* 140 Ill. 21, 35; *Thompson v. Crains,* 216 Ill. App. 300, 311.)

Defendants contend that their expressed understanding in their letter of June 23, that plaintiff was to allow "all charges to follow" should be construed to mean only for transportation from the original consignee at East Chicago, Ind., to the Interstate Iron & Steel Company at the same destination. The same letter expressly guaranteed "all transportation charges" and indicated their ownership of the bill of lading, which on the day they requested diversion of the shipment they asked to have corrected for reconsignment to the latter company. Not only do we think it clear that they thus assumed and intended to assume liability for all charges for transportation under the bill of lading, but by accepting the freight and reconsigning it they received the benefit of the transportation and became liable therefor as consignees. (*Case v. Union Pac. R. Co.,* 119 Kan. 706, 241 Pac. 693, 694.) It was held in *New York Cent. R. Co. v. Warren Ross Lumber Co.,* 234 N. Y. 261, that "the consignee becomes liable for the freight charges when an obligation arises on his part from presumptive ownership, acceptance of the goods and the services rendered and benefits conferred by the railroad company." In that case it was said that when the defendant wrote a letter

directing the delivery without notifying the plaintiff that it was not the owner of the goods, it acted as a consignee or volunteer, and accepted the goods by an act of ownership in giving such directions. Here defendants not only claimed to have purchased the car, but assumed ownership of the bill of lading and guaranteed its surrender. This same view of liability is taken in *Pennsylvania R. Co. v. Rice Coal Co.*, 113 Ohio St. 34, 148 N. E. 349, and in *Central R. Co. of New Jersey v. National Asbestos Mfg. Co.* (N. J. L.), 127 Atl. 184. In the latter case it was said, citing decisions of the United States Supreme Court, that "it has been definitely established that under the uniform bill of lading the consignee, by accepting the shipment, becomes liable for the lawful freight charges accrued thereon to the carrier," and that the exercise of control in a reshipment necessarily implied acceptance. This doctrine has been accepted by this court in *Chicago, I. & L. Ry. Co. v. Monarch Lumber Co.*, 202 Ill. App. 20, and in *New York Cent. R. Co. v. Platt & Brahm Coal Co.*, 236 Ill. App. 150.

In the latter case defendant relied on a contrary ruling by the third division of this court in *Chicago, I. & S. R. Co. v. D. E. McMillan & Brother Coal Co.*, 207 Ill. App. 58, to which that division has adhered in *Pere Marquette R. Co. v. American Coal & Supply Co.*, 239 Ill. App. 139. The opinions in those cases were based somewhat on facts from which the court found that the act of the consignee in reconsigning the shipment did not constitute such a constructive act of ownership as to render him liable for the freight charges from the original point of consignment, or from the point where the shipment was first diverted. Whatever force may be given to the distinctions there made between the facts of the several cases analyzed, which we find it unnecessary to discuss, we think there can be no doubt that the facts of this case indicate not only constructive acts of ownership by

defendant but show an express promise on their part to pay such charges. Having exercised ownership over the contents of the car and thus impliedly accepted them and the benefits of the transportation, we are constrained to hold that defendants are clearly liable for all such charges, and accordingly reverse the judgment and enter one here for appellant for $212.82, the case having been tried without a jury.

*Reversed with findings of fact and judgment here.*

GRIDLEY and WELLS, JJ., concur.

Findings of fact: We find that defendants accepted the shipment in question and agreed to pay all transportation charges therefor, and afterwards refused to pay the same, and that plaintiff held the car in his possession 43 days, subject to the national car rules as to demurrage.