SHEETS *vs.* WILGUS.

The person named in a shipping bill as the consignee, is the regular and only consignee of the cargo, and by the terms of such bill the master of the vessel is bound to regard and treat him as such, and owes to him all the duties which the master can owe to the consignee, in any case; whether he owns the property or not.

On the other hand, if the person named as consignee, after being shown the shipping bill, assumes the direction and control of the property, he does so (so far as the owner and master of the vessel is concerned) as consignee, and takes upon himself all the obligations and duties which the consignee, in any case, owes to the carrier.

It will not do to allow such a consignee, after he has, as such, succeeded in depriving the carrier of the possession of the cargo, and of the lien upon it for his freight, to set up that he has no real interest in the property, and thereby turn him over to others for his remedy. *Per* FOSTER, J.

If a shipper or consignor would relieve the consignee, who is merely agent for the shipper, from personal liability to the carrier, he must do it by letting it appear so on the shipping bill, and thus caution the carrier to protect himself, by holding on to his lien until he receives his compensation. The shipper must not throw the carrier off his guard by signing with and delivering to him a shipping bill which represents the agent as the real consignee.

Sheets *v.* Wilgus.

If he does so, and the agent is thereby enabled to obtain the possession of the property, as consignee, he will not be permitted to change his *status* to the injury of the carrier.

APPEAL from a judgment for the plaintiff, ordered at the circuit, upon a trial before the court, a jury having been waived.

The action was brought to recover a balance of $183.34, with interest thereon, which the plaintiff claimed to be due to him, for freight on a cargo of oats, which, as a common carrier, he transported from Buffalo to the city of New York, consigned to the defendant. The defendant claimed that he was merely an agent of the firm of Pease & Trowbridge, to collect certain freights for them, earned by the plaintiff's canal boat, and that under their instructions he collected and paid the same over to the plaintiff, and took his receipt therefor in full. He also set up that the cargo when it arrived at New York, was short to the amount of $183.34, and that that sum was deducted from the freight, and approved of by the plaintiff, and that he thereupon executed the receipt in full.

The proof showed that in 1864 the plaintiff was the owner and master of the canal boat "Marquis Sheets," and that on the 9th of September, 1864, he took a load of oats at Buffalo, on board of his boat, to be taken to New York, and received from Pease & Trowbridge a shipping bill of the same. It was proved that he had lost the original shipping bill, and he produced a copy thereof, which was offered in evidence; to which the defendant's counsel objected, on the ground that it did not appear that the original was duly stamped. The plaintiff testified that he thought there was a stamp on the original. Its reception was still objected to, on the same ground, but the court overruled the objection, and admitted it in evidence; to which the defendant's counsel excepted.

The paper was read in evidence, and was as follows :

" TROY AND ERIE LINE :

Buffalo, Sept. 9th, 1864.

Shipped by Pease & Trowbridge, in apparent good order, on board canal boat Marquis Sheets of North Bay, Captain John Sheets, the following described property to be transported to the place of destination, without unnecessary delay, and delivered to the consignees in like good order, as noted below, in the customary manner, free of lighterage, upon payment of freight and charges as prescribed in this bill. Consignees to pay all harbor towing, from and to the usual place of landing. Four week days, regardless of weather, after arrival and notice of same, to be allowed consignees to discharge this cargo, after which time the cargo or consignees are to pay demurrage at the rate of 1½ per cent per day upon the freight, including tolls for each and every day of such demurrage over the four days as above specified, until the cargo is fully discharged. All damage caused by the boat or carrier, or deficiency in the cargo, from quantity as herein specified, to be paid for by the carrier and deducted from the freight, and any excess in the cargo to be paid for to the carrier by the consignees.

In case grain becomes heated, while in transit, the carrier shall deliver his entire cargo, and pay only for any deficiency caused by heating, exceeding five bushels for each 1000 bushels. The freight charges and demurrage payable to ———— or order, at the place of destination, who is the only party authorized to collect the same, and whose receipt shall be in full of all demands on this cargo or bill of lading.

☞ Tolls on this cargo having been advanced by shippers, if refunded, must be to them or their order.

9900 bushels of oats, . . . . . 316,800 pounds.

(Signed) PEASE & TROWBRIDGE. (Pease.)

JOHN SHEETS.

Sheets *v.* Wilgus.

J. H. WILGUS & Co., 9 Coenties Slip, New York:

On safe delivery as addressed, Messrs. J. H. Wilgus & Co. will please pay captain freight at eleven (11) cents per bush. less our advances:

| | | |
|---|---:|---:|
| Tolls, . . . . . . . . . . . . | $280 | 14 |
| 50 bushels oats (81,) . . . . . . . . | 40 | 50 |
| Cash to captain, . . . . . . . . . . | 400 | 00 |
| Insurance, . . . . . . . . . . . | 54 | 50 |
| Commission, . . . . . . . . . . . | 30 | 63 |
| Trimming, . . . . . . . . . . . . | 12 | 37 |
| | $818 | 14" |

When the boat arrived in New York, the plaintiff went to the office of the defendant, and showed him the original shipping bill, and informed him where the boat lay. The defendant took a sample of the oats, and directed that the boat should be towed to Brooklyn and unloaded into vessels, which was done, under the charge of a man sent by the defendant for that purpose.

After the vessel was unloaded, the defendant claimed that there was a shortage in the cargo amounting in value to $183.34, and insisted upon deducting that amount from the sum due, according to the shipping bill. While the vessel was being unloaded, the defendant paid the plaintiff several small sums, and on the 4th day of October, two or three other small sums, the last of which was for $23.77, and making in all about $100. The receipt for $23.77, which the plaintiff executed to the defendant, purported to be a receipt in full for the freight. And the payments in all, were for the whole amount of his claim for freight, after deducting the said sum of $183.34, claimed by the defendant for shortage. The plaintiff testified that the defendant, when he paid him the last payment, wanted a receipt, and that he refused to give him a receipt to balance, and that he supposed the receipt which he signed

was for the $100 paid to him, and not a receipt in full. And he gave testimony by other witnesses corroborative of his statement.

On the part of the defendant, testimony was given to show that the plaintiff knew the receipt was in full, and was intended to be so.

Testimony was given on the part of the defendant, that when the oats were unloaded at Brooklyn the quantity was short of that called for by the shipping bill, to the value of $183.34, and the plaintiff gave evidence tending to show that the weighing of the oats at Brooklyn was incorrect; and he also proved that all the oats which he received on board at Buffalo were delivered and weighed at Brooklyn.

The defendant gave in evidence a shipping bill which was sent to him by Pease & Trowbridge, before the arrival of the oats, similar to the one produced by the plaintiff, except that it was not signed by the plaintiff, and that it stated that the oats were shipped on account of Bennett & Avery of Buffalo, to the care of James D. Bennett & Co., New York, subject to the order of the Marine Bank, Buffalo, care J. H. Wilgus & Co., New York, and "on safe delivery, as addressed, Messrs. J. H. Wilgus & Co. will collect freight as above, and pay captain same at eleven (11) cents per bush., less our advances to him of $818.14.

(Signed)  PEASE & TROWBRIDGE,
Thompson."

And it did not appear that the plaintiff had ever seen or had any knowledge of it.

On the trial, several offers were made on the part of the defendant to introduce testimony to show that in fact Bennett & Co. were the agents of the owners of the oats, and took control of them at New York; that they refused to pay the shortage; and that the plaintiff had notice of their refusal. All which evidence was excluded by the

court, on the ground that the defendant was the consignee, and as such was liable to the plaintiff. One witness for the defendant testified that the original shipping bill, a copy of which was put in evidence by the plaintiff, had no revenue stamp attached to it.

The court found as facts, that on the 9th of September, 1364, the plaintiff shipped on board his canal boat, Marquis Sheets, at Buffalo, 9900 bushels of oats, shipped by Pease & Trowbridge, and consigned by them to the defendant, James H. Wilgus, by the name of J. H. Wilgus & Co. That he transported said cargo to New York, and delivered the same to the defendant, who took the same of the plaintiff, and took the direction of the cargo. That the freight, by the terms of the shipping bill, was eleven cents per bushel. That on arrival at New York, Wilgus paid the plaintiff the balance due him for freight, except $183.34, which last amount he kept back, claiming that the plaintiff did not deliver said cargo into that amount in value. That the bill of lading delivered to said plaintiff was duly stamped with the proper internal revenue stamp. That the shipping bill introduced by the defendant had on its margin the direction, " to care of J. H. Wilgus & Co." That the plaintiff did deliver the whole quantity put on board the boat, and called for in the bill of lading, 9900 bushels of oats. That the plaintiff, though he signed the receipt in full, did not know that such was its purport, and consequently did not relinquish his claim for the remainder of the freight. That he did not agree or covenant to look to J. O. Bennett & Co. for payment of the freight, nor to be bound by any arrangement made between them and the defendant. That the defendant was not the owner of, or interested in, the cargo, or any part of it; and that out of the freight collected by the defendant of Bennett & Co., the defendant retained the amount of Pease & Trowbridge's charges and advances, (less $4.50

paid by them to the defendant for his entire services,) and paid the balance to the plaintiff.

The court found as conclusion of law, that the plaintiff was entitled to recover the said sum of $184.34, and interest thereon from October 4th, 1864, to the time of trial, making in all $226.61, for which sum and costs judgment was ordered in favor of the plaintiff.

The judgment was entered, and from that the defendant appealed.

*Pomeroy & Southworth,* for the plaintiff.

*F. Kernan,* for the defendant.

*By the Court,* FOSTER, J.  Upon the question whether the plaintiff delivered to the defendant all the oats which he received on his boat at Buffalo, the evidence was conflicting.  The defendant showed by his witnesses that when delivered the weight was some two hundred bushels less than it was when received by the plaintiff, as shown by the shipping bill.  The plaintiff showed by his testimony that some of the weights at Brooklyn, when it was delivered, were not accurate, and his proofs are strong to show that at least all that he received was delivered to the defendant.  So too, in regard to the receipt which the plaintiff gave to the defendant for the $23.77.  If the defendant's witnesses are to be believed, it was intended as a receipt in full; but if the evidence on the part of the plaintiff is correct, it was not supposed to be a receipt in full, but a receipt merely for the amount which the plaintiff had received of him.

The court below was the best judge of the credit to be given to the several witnesses.  It has determined both of these questions in favor of the plaintiff, and we cannot disturb the determination which it has made of them. The result of his decision of these questions of fact is that

Sheets *v.* Wilgus.

there was $183.34 due and unpaid to the plaintiff; and the next question is, was the defendant liable for such payment.

To determine this, it is first necessary to inquire whether it appears that he was consignee of the cargo or not; and I think this involves the question whether the copy of the shipping bill offered by the plaintiff was properly admitted in evidence. It is true that the shipping bill introduced on the part of the defendant shows that the cargo was to the care of the defendant; but I think the effect of that is controlled by the special character which the clause immediately thereafter assigns to him, the more especially as it is also consigned to the " care of James O. Bennett & Co." And also because the plaintiff was not a party to that. He was not aware of it, and it did not influence his action. But without spending much time on that question, as I do not deem it important, was the copy offered by the plaintiff properly admitted by the court?

There was a conflict as to whether the original was stamped or not. The witness for the defendant testifies that it was not, and the plaintiff testifies that he thinks it was. The court decided that question, and although the witness for the defendant swears quite confidently, while the plaintiff appears to be more uncertain, still it was the province of the court to determine the fact, and it has done so, and admitted it, and its decision of that question must stand.

We must assume, then, that there was a valid shipping bill of which that was a copy, and the testimony shows that when the plaintiff reached New York with his boat he showed that shipping bill to the defendant, and took his directions concerning the delivery of the cargo.

By that shipping bill the defendant was the regular and only consignee of the cargo, and by the terms of it the plaintiff was clearly bound to regard and treat him as such, and owed to him all the duties which the master can owe

to the consignee in any case, whether he owned the property or not. And on the other hand, the defendant, when after being shown the shipping bill, he assumed the direction and control of the property, he did so (so far as the plaintiff was concerned) as consignee; and took upon himself all the obligations and duties which the consignee, in any case, owes to the carrier.

This question has too often been before us for adjudication to leave it an open one now. It will not do to allow such a consignee, after he has, as such, succeeded in depriving the carrier of the possession of the cargo, and of the lien upon it for his freight, to set up that he has no real interest in the property, and thereby turn him over to others for his remedy.

If a shipper or consignor would relieve the consignee, who is merely agent for the shipper, from personal liability to the carrier, he must do it by letting it appear so on the shipping bill, and thus caution the carrier to protect himself, by holding on to his lien until he receives his compensation. The shipper must not throw the carrier off his guard by signing with and delivering to him a shipping bill which represents the agent as the real consignee. When they do so, and the agent is thereby enabled to obtain possession of the property as consignee, they must not be permitted to change his *status* to the injury of the carrier.

If I am right in these conclusions, it disposes of the case; for although the defendant's counsel proposed some twenty other findings of fact which were not found by the court below, yet they are all either included in those that were found, or were entirely immaterial, under the principles which I assumed. And there was no exception to evidence of the least materiality except such as I have herein examined.

The judgment should be affirmed.

[ONONDAGA GENERAL TERM, April 6, 1869. *Bacon, Foster, Mullin* and *Morgan,* Justices.]