PENNSYLVANIA RAILROAD COMPANY, Appellant, *v.* JAMES L. TITUS, Doing Business under the Name and Style of TITUS BROTHERS, Respondent.

Carriers — when promise on part of consignee to pay freight charges implied — rates fixed under Interstate Commerce Act arbitrary — when consignee not released by partial payment.

1. A consignee is the presumptive owner of freight consigned to him. When he accepts it, and the carrier having no knowledge or notice before the delivery that the consignee was a factor or agent and that his acceptance would be in that capacity, the law implies a promise on the part of such consignee to pay the charges, when such are the terms on which the freight is to be delivered.

2. The United States statutes, known as the Interstate Commerce Act, make freight rates on railroads engaged in interstate commerce arbitrary, immutable by the agreement, mistake or artifice of the parties and not to be deviated from. Payment of part of the correct amount by the consignee does not fulfill or release performance of his contract.

*Pennsylvania R. R. Co.* v. *Titus,* 156 App. Div. 830, reversed.

(Argued June 10, 1915; decided September 28, 1915.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered June 11, 1913, which reversed a determination of the Appellate Term affirming a judgment of the Municipal Court of the city of New York in favor of plaintiff upon the submission of a controversy under section 241 of the Municipal Court Act as it formerly existed.

The nature of the controversy and the facts, so far as material, are stated in the opinion.

*Ray Rood Allen* for appellant. The defendant became liable for the tariff charges upon the shipment the moment he received the goods. (*N. Y., N. H. & H. R. R. Co.* v. *York & Whitney,* 215 Mass. 36; *Penn. R. R. Co.* v. *Crutch-*

2

*field,* 55 Pa. Super. Ct. 346; *P. & R. Ry. Co.* v. *Baer,* 56 Pa. Super. Ct. 307; *C. G. Ry. Co.* v. *Birmingham S. & B. Co.,* 9 Ala. App. 419.) The tariff showing the rate on these peaches was eighty-one cents and not eighty and two-tenths cents being on file with the interstate commerce commission, all persons dealing with the interstate carrier are chargeable with notice of the tariff and the amount of their liability for transportation is determined by the tariffs alone. (*Louisville & Nashville R. R. Co.* v. *Maxwell,* 237 U. S. 94; *T. & P. R. R. Co.* v. *Mugg,* 202 U. S. 242; *Gulf, etc., R. R. Co.* v. *Hefley,* 158 U. S. 98; *C. & A. R. R. Co.* v. *Kirby,* 225 U. S. 155; *U. P. R. R. Co.* v. *A., S. & R. Co.,* 202 Fed. Rep. 700; *Gardiner* v. *N. Y. C. & H. R. R. R. Co.,* 201 N. Y. 387.) The defendant is now liable for the unpaid balance of the tariff charges, and the plaintiff is not estopped to collect. (*L. R. & N. Co.* v. *Holly,* 127 La. Ann. 615; *L. & N. R. R. Co.* v. *Mottley,* 219 U. S. 467; *I. C. R. R. Co.* v. *Henderson El. Co.,* 226 U. S. 441.)

*Dana T. Ackerly, George W. Morgan* and *Edward A. Craighill, Jr.,* for respondent. It being expressly admitted that defendant was not the owner of the goods, he cannot be held liable for the undercharge on the theory that, as consignee, he was presumptively the owner and that, by accepting delivery without disclosing his agency, he authorized the carrier to treat him as the actual owner. (*Elwell* v. *Skiddy,* 77 N. Y. 282; *Dart* v. *Ensign,* 47 N. Y. 619; *Ackerman* v. *Redfield,* 9 Hun, 378.) At common law a consignee who is not the owner becomes in no way liable for transportation charges unless and until the goods have been delivered to and accepted by him. His liability is based solely upon a contract implied from the fact of his accepting the goods and allowing the carrier to waive its lien. (*Merrick* v. *Gordon,* 20 N. Y. 93; *Clark* v. *Masters,* 1 Bosw. 177; *Merian* v. *Funck,* 4 Den. 110; *N. Y., etc., Nav. Co.* v.

*Young,* 3 E. D. Smith, 187; *Erie R. R. Co.* v. *Wanaque Lumber Co.,* 75 N. J. L. 878; *Central R. R. Co.* v. *MacCartney,* 68 N. J. L. 165; *Elwell* v. *Skiddy,* 77 N. Y. 282; *Coleman* v. *Lambert,* 5 M. & W. 502; *Scaife* v. *Tobin,* 3 B. & A. 523; *Davis* v. *Pattison,* 24 N. Y. 317; *Hindsdell* v. *Weed,* 5 Den. 172.) The liability of a consignee who is not the owner, but who accepts the goods, is fully discharged by the payment of the amount demanded by the carrier upon the surrender of its lien. (2 Hutchinson on Carriers [3d ed.], § 807; *Central Railroad* v. *MacCartney,* 68 N. J. L. 165.) The Interstate Commerce Act does not change the rule in this case. (*Dempsey & Co.* v. *P. & R. R. R. Co.,* 30 Pa. C. C. 484; *B. & O. R. R. Co.* v. *La Due,* 128 App. Div. 594; *Nicola, Stone & Myers Co.* v. *Louisville, etc., R. Co.,* 14 I. C. C. 199; *Gamble-Robinson Commission Co.* v. *St. Louis, etc., R. Co.,* 19 I. C. C. 114; *Baker Mfg. Co.* v. *Chicago, etc., R. Co.,* 21 I. C. C. 605; *Crutchfield & Woolfolk* v. *Southern Pac. Co.,* 24 I. C. C. 679.) The purpose of the Interstate Commerce Act is fully effectuated without imposing this liability upon a consignee who has received no benefit, since the carrier has a clear remedy to recover the undercharge either against the shipper on his express contract, or against the owner upon *quasi* contract. (*Barker* v. *Havens,* 17 Johns. 234; *Jobbitt* v. *Goundry,* 29 Barb. 509; *Gilson* v. *Madden,* 1 Lans. 172; *Allen* v. *Bareda,* 7 Bosw. 204; *Wooster* v. *Tarr,* 8 Allen [Mass.], 270; *Union Freight R. Co.* v. *Winkley,* 159 Mass. 133; *Holt* v. *Westcott,* 43 Me. 445; *Grant* v. *Wood,* 21 N. J. L. 292; *Central R. R. Co. of N. J.* v. *MacCartney,* 68 N. J. L. 165; *Hatch* v. *Tucker,* 12 R. I. 501; *Shepherd* v. *De Barnales,* 13 East, 565; *Tapley* v. *Martens,* 8 T. R. 451.)

COLLIN, J. The action is to recover from a consignee a balance of freight charges which had not been claimed or collected at the delivery of the goods. The cardinal

facts are: In July, 1907, the plaintiff, a common carrier by railroad, engaged in interstate commerce, delivered to the defendant as the consignee 43,080 pounds of peaches. The legal freight charge, as fixed by the schedule of rates duly published, filed and posted, in accordance with the acts of Congress, and refrigerating charges were $491.45. On the day next following the delivery, the defendant paid the plaintiff the sum of $488.00, freight and refrigerating charges. The plaintiff erroneously used, in assessing the freight charges collected, the rate of 80.2 cents per hundred pounds. The correct rate was 81 cents per hundred pounds. This action is to recover the balance of $3.45. About fifteen months after the delivery, the plaintiff discovered the error and demanded in vain that sum of the defendant. The peaches were consigned to defendant by one Franklin at Adairsville, Georgia, under the agreement that the defendant should sell them for Franklin and remit to him the avails, less, however, his commissions and expenses, including freight and refrigerating charges, which facts were not known by the plaintiff prior to said demand. The defendant refused to pay the plaintiff the $3.45 upon the ground that he had acted in the transaction as the agent of Franklin and before the said demand had remitted to him the avails of the sale, less his commissions and expenses, including the freight and refrigerating charges, of $488.00. The bills of lading delivered by the initial carrier to the shipper provided:

"Owner or consignee shall pay freight, and average, if any, and all other charges accruing on said property, before delivery, and according to weights as ascertained by any carrier hereunder; * * * in accepting this bill of lading the shipper, owner and consignee of the goods and the holder of the bill of lading agree to be bound by all of its stipulations, exceptions and conditions, whether printed or written."

The defendant was liable to the plaintiff for the lawful

and correct freight charges, upon either of two grounds. As to the plaintiff, the defendant stood in the relation of owner of the peaches.   The bills of lading designated him as the consignee and did · not disclose his agency or the ownership of Franklin, nor did he notify the plaintiff before it delivered the peaches of either of such facts.   At the time of the delivery the plaintiff did not have knowledge or notice, express or inferential, that the defendant was not the owner.   Under those conditions, the plaintiff had the right, as a matter of law, to regard and deal with the consignee as the owner of the peaches, and the consignee in permitting the plaintiff to so deal with him agreed, through implication, that he would pay the plaintiff's lawful charges for transporting and delivering the peaches to him.   The consignee was the presumptive owner and when he accepted the peaches and had not informed the plaintiff and the plaintiff did not have knowledge or notice before the delivery that he was a factor or agent and that his acceptance of them would be in that capacity, he by the acceptance obligated himself to pay the unpaid legal charges of transportation. (*Sweet* v. *Barney,* 23 N. Y. 335; *Krulder* v. *Ellison,* 47 N. Y. 36; *Coleman* v. *Lambert,* 5 M. & W. 502; *N. Y., N. H. & H. R. R. Co.* v. *York & Whitney Co.,* 215 Mass. 36; *Philadelphia & Reading Ry. Co.* v. *Baer,* 56 Pa. Supr. Ct. 307; *Sheets* v. *Wilgus,* 56 Barb. 662.)   The obligation arose from the presumptive ownership, the acceptance of the goods and the services rendered and benefits conferred by the plaintiff for charges made and to be paid.

The bill of lading under which the peaches were transported and delivered to the defendant contained the provisions we have already quoted.   Thereunder the delivery of the goods was to be withheld until the freight charges were paid.   The payment of the charges was made by the bill of lading, or by one of the terms of the shipment controlling the rights of the consignee, the condition of a delivery to the consignee.   When he accepted the delivery

under such bill of lading or provision, the law implied a promise on his part to pay the charges, such being the terms on which the peaches were to be delivered. In accepting and receiving the goods, he made himself a party to the contract between the consignor and the plaintiff, or entered into an original contract to pay, which took the place of the right of the plaintiff to retain the property until the charges were paid. (*Merian* v. *Funck,* 4 Denio, 110; *Hinsdell* v. *Weed,* 5 Denio, 172; *Davison* v. *City Bank,* 57 N. Y. 81; *Hatch* v. *Tucker,* 12 R. I. 501; *N. Y., N. H. & H. R. R. Co.* v. *York & Whitney Co.,* 215 Mass, 36.)

The defendant, therefore, became bound to pay to the plaintiff the freight charges — not those charges as erroneously or illegally computed by the plaintiff or himself, but the lawful and correct charges. If the amount of them were subject to the determination of the plaintiff, it might, of course, remit them in part or, perhaps, estop itself from collecting a balance. We have no concern here in regard to such hypothesis. The one and only lawful and correct freight rate was that set forth in the schedule or tariff filed in the office of the interstate commerce commission and duly published and posted. The United States statutes, known as the Interstate Commerce Act, made that rate arbitrary, immutable by the agreement, mistake or artifice of the parties and not to be deviated from. The consignor, consignee and carrier were alike charged with full knowledge of it and its inescapable force and it was the rate which the defendant agreed to pay in accepting the goods. (*Central R. R. Co. of N. J.* v. *Mauser,* 241 Pa. St. 603; *N. Y., N. H. & H. R. R. Co.* v. *York & Whitney Co.,* 215 Mass. 36; *Penna. R. R. Co.* v. *Crutchfield,* 55 Pa. Superior Ct. 346; *Louisville & Nashville R. R. Co.* v. *Maxwell,* 237 U. S. 94; *Union Pac. R. Co.* v. *American Smelting & Refining Co.,* 202 Fed. Rep. 720.)

Obviously, the payment of a part of the correct amount

did not fulfill or release performance by the defendant of his contract. The record does not present a question of estoppel on the part of the plaintiff, which could not by its act, intentional or unintentional, relieve the defendant or itself from the compulsory direction of the statutes. The fact that the defendant had remitted to the consignor the net avails of the sale of the peaches is immaterial.

The order of the Appellate Division should be reversed and that of the Appellate Term affirmed, with costs in the Appellate Division and this court.

WILLARD BARTLETT, Ch. J., WERNER, HISCOCK, CHASE and CARDOZO, JJ., concur.

Order reversed, etc.