First District—December, 1925.     139

Pere Marquette R. R. Co. v. Am. Coal & Supply Co., 239 Ill. App. 139.

## Pere Marquette Railroad Company, Plaintiff in Error, v. American Coal & Supply Company, Defendant in Error.

### Gen. No. 30,023.

1. .Carriers—*liability of consignee ordering reconsignment en route, for freight charges, to original destination.* The consignee of a shipment who, while the same is en route, orders its reconsignment to a point other than the original destination, does not, by such act, exercise such constructive ownership over the shipment as to render him liable to the carrier for the freight charges on such shipment to the original destination thereof.

2. Carriers—*liability of consignee ordering reconsignment to third person, and thence to himself at another destination, for freight charges from original destination to second and thence to third destination.* Where the consignee of a shipment, after having directed reconsignment thereof to a new destination and consignee, upon receiving notice that such new consignee will not accept the shipment gives a new order of consignment to himself at a third destination, he thereby renders himself liable to the carrier for the freight charges from the original destination of the shipment to the second designated destination, and thence to the final destination, and for intervening demurrage charges.

Error by plaintiff to the Municipal Court of Chicago; the Hon. Laurence B. Jacobs, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1925. Reversed and cause remanded. Opinion filed December 23, 1925. Rehearing denied January 4, 1926.

Glennon, Cary, Walker and Murray, for plaintiff in error; L. Beers-Jones, of counsel.

Edward D. Pomeroy and Henry T. Martin, for defendant in error.

Mr. Presiding Justice Thomson delivered the opinion of the court.

By this writ of error the plaintiff seeks to reverse a judgment of the municipal court of Chicago, finding

the issues against the plaintiff and dismissing its suit. For the most part, the facts involved were stipulated. From such stipulation it appears that the Green County Fourth Vein Coal Company shipped certain cars of coal from Midland, Indiana, consigned to the defendant at Chicago, over the Chicago, Indiana & Louisville Railway Company; that while the coal was in transit the defendant, consignee, reconsigned it to the Republic Motor Company at Alma, Michigan. Pursuant to the reconsignment orders, the coal was forwarded over the plaintiff railroad to the Republic Motor Company at Alma, Michigan, but before it arrived at that destination, the motor company advised the defendant that it could not receive the coal and the defendant consignee reconsigned the coal to itself at Saginaw, Michigan. It further appears from the stipulation that upon the arrival of the coal at Saginaw the defendant's agent was duly notified and he inspected the cars and rejected them. After certain demurrage charges had accrued against these cars, at Saginaw, and such charges as well as the freight charges remained unpaid, the coal was sold by the plaintiff railroad company. The plaintiff railroad sued the defendant consignee for the freight charges from the point of shipment, in Indiana, to Saginaw, and the demurrage charges, less $200 realized from the sale of the coal. The amount of the plaintiff's claim was $784.24.

In support of its writ of error the plaintiff presents an argument separated into two parts. The first part deals with the liability of the defendant, for freight charges on the coal in question from Midland, Indiana, to Alma, Michigan; and the second part deals with the liability of the defendant for freight charges from Alma, Michigan to Saginaw, Michigan. In our opinion, this is not a logical separation of the liability, if it may be separated into two parts in this manner. We shall first consider the liability of the defendant for the

freight charges on this coal from Midland, Indiana to Chicago, the original point of destination, or to the point of original diversion on the order of the defendant, after which we shall consider the liability of the defendant for the freight charges beyond that point.

The plaintiff railroad company contends that a consignee who is the owner or the presumptive owner of goods shipped, and who accepts the goods, is liable upon an implied promise to pay the freight charges, citing in support of that contention: *Jackson v. Piowaty & Sons*, 205 Ill. App. 329; *Elgin, J. & E. R. Co. v. Rockwell Lime Co.*, 213 Ill. App. 25; *Pittsburg, C., C. & St. L. Ry. Co. v. Fink*, 250 U. S. 577; *New York Cent. & H. River R. Co. v. York & Whitney Co.*, 256 U. S. 407. In each one of these cases the defendant consignee accepted delivery of the goods from the carrier, together with a bill for the freight charges due the carrier, and either at the time, or shortly thereafter, paid those charges, and the lawsuits involved were by the carriers for additional freight charges which had been omitted from the first freight bills through error; and it was held in each of the cases that the defendant was liable. These decisions no doubt apply the law correctly to the situations there presented. In the case at bar, however, the consignee to whom the coal was consigned at Chicago did not accept the delivery of the coal there and pay part of the freight charges then earned by the carrier, but while the coal was en route to Chicago and before it reached that point, it gave the carrier reconsignment orders directing that the coal be delivered to the Republic Motor Truck Company at Alma, Michigan.

It is the plaintiff's further contention that an original consignee who reconsigns the goods shipped thereby constructively accepts the shipment and is liable for the freight charges thereon, under an implied promise to pay them, within the scope of the rule above mentioned, which would be applicable if the

original consignee had actually received the goods. In support of that contention the plaintiff relies on *Chicago, I. & L. R. Co. v. Monarch Lumber Co.*, 202 Ill. App. 20; *New York Cent. R. Co. v. Platt & Brahm Coal Co.*, 236 Ill. App. 150, and *New York Cent. R. Co. v. Warren-Ross Lumber Co.*, 234 N. Y. 261. In the *Monarch Lumber Co.* case, another division of this court held that an instruction in which the court told the jury that where a consignee accepts a shipment consigned to him, he then becomes liable to pay the carrier the legal transportation charges which have accrued, and further, that it is not necessary that the shipment be physically delivered to the consignee to bind the latter for the charges but that an acceptance may be shown by the action or conduct of the consignee, in giving orders to have the shipment delivered to some other person, was a correct statement of the law. That case involved a shipment of lumber to the defendant at Michigan City, Indiana. The defendant reconsigned the lumber to the Haskell & Barker Car Company at Michigan City. The latter company refused to accept the shipment and the defendant then reconsigned it to itself at Chicago. It does not appear whether the defendant received the lumber at Chicago or not. We presume, however, that it did for the court relies, in its opinion, on *St. Louis Southwestern Ry. Co. v. Gramling*, 97 Ark. 353, 133 S. W. 1129; *Pennsylvania Ry. Co. v. Titus*, 216 N. Y. 17, and *Union Pac. R. Co. v. American Smelting & Refining Co.*, 202 Fed. 720, and in all three of those cases the consignments of goods in question were delivered to the various defendants and accepted by them.

The *Platt & Brahm Coal Co.* case, decided by the Second Division of this court, involved a shipment of coal from Prairie, Illinois, consigned to the defendant at Chicago, via the East St. Louis & Suburban Railroad and the Chicago & Alton Railroad. This coal had been purchased by the defendant from the consignor

at a price which was f.o.b. the mines, at Prairie, Illinois. While the car was en route to Chicago the defendant gave the Chicago & Alton Railroad a reconsignment order, directing that the coal be forwarded to the Dean Fuel & Supply Company at Jackson, Michigan, via the plaintiff railroad. This written order of reconsignment contained the words "charges follow" and "protect through rate." This reconsignment order was given by the defendant pursuant to an order they had received from the Dean Fuel & Supply Company, for coal to be shipped to it at Jackson, at a stipulated price, f.o.b. the mines. The coal was delivered to the ultimate consignee at Jackson, and in collecting the freight charges from that consignee the plaintiff railroad neglected to include the charges of the East St. Louis & Suburban Railroad, because these charges were not included in the waybill. These charges were afterward paid by the plaintiff railroad company to the East St. Louis & Suburban Railroad, and the plaintiff company then sued the defendant therefor, as the original consignee, and it was held that the defendant was liable to the railroad for those charges, adopting the decision of the New York Court of Appeals, in the case of *New York Cent. R. Co. v. Warren-Ross Lumber Co.*, 234 N. Y. 261, as against the decision of this court in the case of *Chicago, I. & S. R. Co. v. D. E. McMillan & Brother Coal Co.*, 207 Ill. App. 58.

In the *Ross Lumber Co.* case, 234 N. Y. 261, there was a shipment of lumber consigned to the defendant at Boston, Massachusetts. Before the lumber arrived at Boston, the defendant reconsigned it to the Schieck-Johnson Company. It does not appear from the opinion where the company was located. The reconsignment order was addressed to the railroad company and directed delivery of the lumber to the Schieck-Johnson Company, "of your city" but there is nothing which indicates what city that was, whether Boston or some other city. The reconsignment order directed

the railroad to collect the freight charges from the Schieck-Johnson Company. The railroad delivered the lumber to that company but did not collect the charges and the company later became bankrupt, after which the railroad sued the defendant as the original consignee, to recover the charges in question. In the course of its opinion the court observed that the consignor is ordinarily liable for freight charges, and also that the standard bill of lading provides that the owner or consignee shall pay the freight. The court then stated that this provision in the bill of lading imposes no obligation on the carrier to insist upon the payment of freight before delivery to the consignee, for it was not part of the contract between the consignor and the carrier that the latter should collect its bill from the consignee, but that the carrier may forego collection from the consignee and collect from the consignor. The court then went on to say that while no contractual relation exists between the carrier and the consignee, merely by reason of the designation of the latter as consignee, nevertheless, the consignee may become liable for the freight charges when an obligation arises on his part from presumptive ownership, by reason of the acceptance of the goods and the services of the carrier for such charges. In that case there was a bill of lading which designated the defendant as consignee and the court said that that, in itself, was some evidence that it was the owner of the goods shipped, and as that was so, it followed that if the defendant accepted them, as owner, the law implied a promise on its part to pay the charges, citing *Pittsburg, C., C. & St. L. R. Co. v. Fink*, 250 U. S. 577. The court then said that when the defendant consignee addressed the reconsignment order to the plaintiff railroad, directing delivery of the lumber to the Schieck-Johnson Company, without notifying the railroad that it was not the owner, it must be presumed that it was acting as the consignee of the lumber. The court then said: "It

follows that it accepted the goods by an act of ownership when it exercised dominion over them by giving directions for their delivery and the plaintiff was justified in treating it as the owner of the goods.'' In support of that proposition the New York court cites the earlier case of *Pennsylvania Ry. Co. v. Titus,* 216 N. Y. 17. In the *Titus* case the court was not called upon to construe the effect of a reconsignment order. That case involved a shipment of peaches to the defendant as an original consignee. The peaches were delivered and accepted by that consignee and the day following the delivery and acceptance, the freight bill which had been presented by the railroad company was paid by. the defendant. An error had been made in computing the bill and later the railroad company demanded an additional payment on the freight. The defendant refused to make that payment. The peaches had been consigned to the defendant by one Franklin, under an agreement to the effect that the defendant should sell them for Franklin's account and remit the proceeds of the sale to him, less commissions and expenses which included freight. The facts were not known to the railroad prior to the demand it made for the additional freight. In refusing the demand, the defendant represented that it had previously remitted the proceeds of the sale to its principal, deducting commissions and expenses, including the freight charges which it had paid the railroad. The court held that the defendant was liable for the additional freight, saying that the defendant stood in the relation of owner of the peaches, as far as the railroad was concerned, the bills of lading designating the defendant as the consignee and not disclosing the consignee's agency or the ownership of Franklin. The court further held that at the time of the delivery, without any notice of the status of the defendant or the interest of Franklin, the railroad had the right, as a matter of law, to consider the consignee as the owner of the peaches; and the consignee in per-

mitting the railroad to so deal with him, agreed, by implication, that he would pay the railroad's lawful charges for the transporting and delivery of the peaches to him. The court said: "The consignee was the presumptive owner and when he accepted the peaches and had not informed the plaintiff, and the plaintiff did not have knowledge or notice before the delivery that he was a factor or agent and that his acceptance of them would be in that capacity, he, by the acceptance, obligated himself to pay the unpaid legal charges of transportation."

We are unable to agree with the reasoning laid down by the New York Court in the *Ross Lumber Co.* case, apparently to the effect that if the consignee gives the carrier a reconsignment order directing that the goods be delivered to another, it should be held that the reconsignment order is such an act of ownership and exercise of dominion over the goods as will obligate the consignee to pay the freight charges.

In the *Platt & Brahm Coal Co.* case, decided by the Second Division of this court, the stipulation of facts showed that the sale there involved was a sale f.o.b. the point of shipment, and we do not disagree with the holding in that case to the effect that in that situation the consignee should be held liable to the carrier for the freight charges. Where a carrier sues a consignee for the freight charges and the facts, either stipulated or proven, show that the goods shipped were purchased by the consignee f.o.b. the point of shipment, as in the latter case, the consignee will be estopped from contesting its liability for the freight, because it has accepted the benefit of the services of the carrier, in transporting the goods, and during all the time such service was being rendered the title to the goods was in the consignee.

While this question of liability of the consignee for freight charges is one which is applicable as between the consignor and the consignee, we are of the opin-

ion that no presumptions should be indulged when the question arises as between the carrier and the consignee, which should alter the consignee's liability. In other words, goods shipped to a consignee may have been sold f. o. b. point of shipment, or f. o. b. point of destination, and we know of no reason why one situation should be presumed rather than the other, in the absence of any showing on the question. In the case at bar it is not shown, either by the facts stipulated or proven, whether there was any bill of lading in this case, or whether the sale of coal shipped to the consignee was a sale f. o. b. the mines or f. o. b. the point of destination. In such a situation we are of the opinion that the bare facts that the defendant was the consignee of this coal and gave the railroad a reconsignment order while the coal was en route, which changed its destination, and directed its delivery to one other than the original consignee, were not such as to imply an obligation on its part to pay the freight from the mines.

So far as the freight charges from Midland, Indiana, the point of shipment, to Chicago, the point of original destination, or to the point at which the coal was first diverted, are concerned, we adhere to our former decision in *Chicago, I. & S. R. Co. v. D. E. McMillan & Brother Coal Co.,* 207 Ill. App. 58. In that case we said that no authority had been cited to sustain the proposition "that a consignee by merely reconsigning the car, becomes liable for the freight charges that may have accrued up to that time. The liability of the consignee to pay the freight charges, in the absence of an express agreement, arises where the goods have been accepted by him, *knowing that the freight charges are unpaid and that the carrier looks to him for payment. Union Pac. R. Co. v. American Smelting & Refining Co.,* 202 Fed. 720; *Central R. Co. of New Jersey v. MacCartney,* 68 N. J. L. 165; *Central of Georgia R. Co. v. Southern Ferro Concrete*

*Co.,* 193 Ala. 108.'' Such a situation does not arise where an original consignee merely gives the carrier a reconsignment order, under such a situation as is disclosed by the facts stipulated in the case at bar. We agree with the decision of Mr. Justice Pitney in the *Central R. Co. of New Jersey v. MacCartney, supra,* where it was held that ''the liability of the consignee to pay to the carrier the freight upon the goods transported, in a case such as here presented, depends not upon any general legal duty resting upon a consignee simply because he is a consignee, but upon some agreement or undertaking made on his part.'' The court then held that where a consignee accepts delivery of the goods from the carrier, together with a bill for the amount of the freight charges, with knowledge that the carrier is giving up for his benefit a lien upon the goods transported, for the charges so stated, such conduct of the consignee in accepting the goods, standing alone, was sufficient evidence of an implied promise to pay the freight charges.

In our opinion, the fact that an original consignee reconsigns the goods shipped and that the railroad complies with the order, is no indication either actual or constructive, that the railroad is looking to the consignee for the payment of the freight, or that the railroad is giving up the lien it has upon the goods, for the amount of the freight charges. Of course it may not be said that the railroad is giving up that lien for it is retaining possession of the goods and is still in a position to enforce the lien unless the freight is paid. We are therefore of the opinion that the act of the consignee in reconsigning the coal in question to Alma, Michigan, may not be said to be such a constructive act of ownership as to make the defendant liable for the freight charges to Chicago, the original point of consignment, or to the point where the coal was first diverted.

We now come to consider the liability of the defend-

ant consignee for the freight charges for that part of the movement of this coal from Chicago, the original destination or from the point of first reconsignment, to the point of ultimate destination. In our opinion, the contention of the plaintiff railroad to the effect that the defendant consignee must be considered, as to that part of the movement, as occupying the position of consignor, is sound. A consignor is liable for both freight and demurrage charges, where a shipment is refused by a consignee, even though the consignor has designated himself as the consignee. *Jelks v. Philadelphia & Reading Ry. Co.*, 14 Ga. App. 96, 80 S. E. 216; *Baltimore & O. R. Co. v. Luella Coal Co.*, 74 W. Va. 289, 81 S. E. 1044; *Atchison, T. & S. F. Ry. Co. v. F. H. Stannard & Co.*, 99 Kan. 720. While the court does not say so specifically, in *Chicago, I. & L. R. Co. v. Monarch Lumber Co.*, 202 Ill. App. 20, presumably they treated the original consignee in that case as a consignor, so far as the freight charges were concerned, for the movement of the lumber involved in that case from Michigan City to Chicago. That an original consignor is relieved of liability beyond the designated point of destination, in case such point of destination is changed by the consignee, was held in *New York Cent. R. Co. v. Gardner (In re O'Gara Coal Co.)*, 294 Fed. 89. In the case at bar the consignor having incurred a liability to the carrier for freight charges involving the movement of the coal from Midland, Indiana, to Chicago, may not be burdened with a further liability merely by the execution of reconsignment orders given the carrier by the consignee, for a movement of the coal beyond that point. Such being the case, if the consignee chooses to direct a movement beyond that point of original destination, we are of the opinion that he must be considered liable for the charges involved in such movement, and if he chooses to divert the shipment while en route to its original destination, and before arrival

at that point, then, in our opinion, he should be considered liable for the freight charges involved in all of the movements beyond the point where the shipment leaves its original course, in obedience to the reconsignment order.

From the facts stipulated in the case at bar, it is impossible to determine the proportion of freight charges earned by the carrier up to the point of diversion, for which we hold the consignee would not be liable. If that fact could be ascertained, from the record, we would enter judgment for the plaintiff in this court for the balance. But as we cannot determine that amount, it will be necessary to remand the cause.

For the reasons stated, the judgment of the municipal court is reversed and the cause is remanded to that court for a new trial.

*Judgment reversed and cause remanded.*

O'CONNOR and TAYLOR, JJ., concur.