HENRY C. EICHACKER, M. D., Plaintiff, *v.* THE NEW YORK TELEPHONE COMPANY, Defendant.

Municipal Court of New York, Borough of Queens, Third District, June 30, 1939.

*E. F. W. Wildermuth,* for the plaintiff.

*Charles T. Russell* [*Frank A. Fritz* of counsel], for the defendant.

PETTE, J. This action was instituted by plaintiff to recover from the defendant the sum of $203.50, alleged to represent the difference between business and residence rates for telephone service from March 1, 1923, to November 1, 1936. The complaint sets forth a cause of action in contract and alleges facts showing the defendant's violation of certain provisions of the Public Service Law, the tariffs and rate schedules filed as required by law. Plaintiff also seeks to recover reasonable counsel fees pursuant to section 93 of the Public Service Law.

At the conclusion of the trial, no question of fact having been raised by the evidence, both sides moved for a directed verdict.

Plaintiff testified, in substance, that (a) he was a duly licensed physician since August, 1914; (b) that he maintained both his residence and office at 60–21 Putnam avenue, formerly known as No. 2355 Putnam avenue, Brooklyn; (c) that prior to March 1, 1923, there had been no variance in telephone rates for business or residential service; (d) after March 1, 1923, the telephone company charged different rates for service at residences and at places specified in the tariff schedules as places of business; (e) and that he paid for telephone service at business rates at the aforesaid address when he should have received such service at residential rates.

The tariff filed by defendant with the Public Service Commission, effective March 1, 1923, and subsequent superseding tariffs filed by defendant provided in part as follows:

" Residence rates apply to the following locations: (1) In private residences or the residential apartments of buildings of any type when business listings are not provided and when all stations are in locations which are a part of the subscriber's domestic establishment.

" (2) *In the office of a physician,* surgeon, dentist, osteopath, christian science practitioner, veterinary surgeon, or nurse, *when such office is located in the subscriber's residence and the office is*

*not a part of an office building,* provided all stations are in locations which are a part of the subscriber's domestic establishment. In such cases, the listing may indicate the subscriber's profession but only in connection with an individual name."

The defendant denied the material portions of the plaintiff's cause of action and set forth that the rates charged were proper and in accord with the application for telephone service at said address. It also attempted to establish a partial defense based upon the Statute of Limitations as a bar to recovery for so much of plaintiff's cause of action as accrued more than six years prior to the institution of suit.

A previous trial of this action resulted in a dismissal of plaintiff's complaint at the end of plaintiff's case. Upon appeal therefrom, the Appellate Term, Second Department, unanimously reversed the judgment, and granted a new trial. Its decision held, in part: " Plaintiff made out a *prima facie* case. The undisputed testimony shows that the plaintiff conducted his medical business in his residence. Under such circumstances, he was entitled to the benefit of the tariff filed with the Public Service Commission. Neither party could change or alter the rate therein fixed. (*Pennsylvania R. R. Co.* v. *Titus*, 216 N. Y. 17.) "

Before indicating the reasons for my opinion, I wish to commend the attorneys for both sides in their painstaking efforts both upon the trial and in the submission of briefs.

The law applicable herein is almost wholly statutory, consisting of the Public Service Law and related legislation. The opinions interpreting and enforcing the provisions of these acts reflect the characteristics found in opinions dealing with questions of statutory interpretation, that is to say, they are devoted primarily to the examination of the language of the statute in the light of accepted aids to statutory construction. But in the case of important statutes, as herein, the decisions, as a rule, soon begin to take on another aspect, becoming themselves the generating source of new principles and producing a coherent body of law having the same essential vitality as other portions of the law whose roots are not imbedded in statutes. This tendency has found abundant illustration in the decisions interpreting and enforcing the Interstate Commerce Act.

The Public Service Law (Art. 5, § 91, subd. 1) prescribes the duties and obligations of the defendant herein as follows: " Every telegraph corporation and every telephone corporation shall furnish with respect to its business such instrumentalities and facilities as shall be adequate and in all respects just and reasonable. All charges made or demanded by any telegraph corporation or tele-

phone corporation for any service rendered in connection therewith shall be just and reasonable and not more than allowed by law or by order of the commission. Every unjust or unreasonable charge made or demanded for any such service or in connection therewith or in excess of that allowed by law or by order of the commission is prohibited and declared to be unlawful."

In order that the rights of persons sustaining loss, damage or injury by reason of the violation of said section might be clearly defined, the Legislature enacted section 93, which provides: " In case a telegraph corporation or telephone corporation shall do or cause to be done or permit to be done any act, matter or thing prohibited, forbidden or declared to be unlawful, or shall omit to do any act, matter or thing required to be done, either by law of the State of New York by this chapter or by any order of the commission, such telegraph corporation or telephone corporation shall be liable to the person or corporation affected thereby for all loss, damage or injury caused thereby or resulting therefrom, *and in case of recovery if the court shall find that such act or omission was wilful it may in its discretion fix a reasonable counsel or attorney's fee, which fee shall be taxed and collected as a part of the costs in the action.* An action to recover for such loss, damage or injury may be brought in any court of competent jurisdiction by any such person or corporation."

It having been held as a matter of law herein by the Appellate Term that the plaintiff had established a *prima facie* case, it becomes necessary to examine the evidence offered by the defendant to determine its legal sufficiency as defenses.

I find that the defendant has wholly failed to prove any facts supporting the allegations contained in its first affirmative defense. The defendant did not comply with the tariff filed in 1923 in that it failed to provide for the plaintiff the kind and type of service to which he became entitled, to wit, service at residence rates.

The responsibility for the selection of the appropriate service classification is on the *public utility* and not the plaintiff-subscriber. Plaintiff, maintaining his office in his residence, was unquestionably entitled to telephone service at residence rates. (Tariff No. 1, Defendant's Exhibits, Nos. 6, 7, 8, 9 and 10.)

The defendant could not make a lawful agreement with the plaintiff to furnish service at rates different from those provided in the tariff filed with the Public Service Commission. (*Pennsylvania R. R. Co.* v. *Titus*, 216 N. Y. 17; Public Service Law, § 91.)

I find upon the entire record of this case that the defendant has, wrongfully and in violation of law, demanded and received payment for telephone service at business rates. For its failure

to provide service at the lower rate, the excess moneys received by the defendant should be refunded. The telephone company held a superior position and knowledge; it had the express duty, according to both statutory law and the principle of fair dealing, to furnish service to its subscribers at rates which were " adequate, *and in all respects just and reasonable.*" (Public Service Law, § 91.) The word " all " as used in the statute is very broad in scope and inclusive: as such, this court should give the language of the section its true and proper interpretation.

Was it " just and reasonable " for the defendant to exact from the plaintiff a rate higher than that which the tariff provided for one situated as was the plaintiff? Manifestly not!

Public service utilities, with the assistance of our government, have a virtual monopoly of the business in which they are engaged, and a different rule should obtain between them and their customers than that which obtained at common law between vendor and vendee. The subscriber has no choice of his purchase or selection of the commodity; he *must* take it at the terms offered or do without it. Under modern business conditions, to do without the commodity would be hazardous. (See *Oklahoma Gas & Electric Co.* v. *Shipley*, 190 Ark. 758; 80 S. W. [2d] 635.)

For these reasons, the rights of the general public should be safeguarded and the provisions of law applicable thereto should be construed so as to afford the public that degree of protection commensurate with the superior position and knowledge of the monopolistic utility.

The relationship of the parties in the case at bar is such that in morals and good conscience the plaintiff had a right to rely upon the defendant for the proper information. The superior knowledge and position of the defendant would prevent the normal application of the doctrine of *caveat emptor.*

Legislation which created and legalized monopolies in the utility field never contemplated that the utilities owed less to the public than that which was and is the common-law right of the public to demand and receive from any and all utilities.

Whether the provisions of sections 91 and 93 of the Public Service Law are arbitrary or unreasonable, whether they have no substantial relation to the end proposed, is obviously not to be determined by assumption or by *priori* reasoning. Ultimate judgment should be based upon consideration of the relevant facts — *ex facto jus oritur* — that ancient rule must prevail in order that we may have a system of living law. (Frankfurter, " Mr. Justice Brandeis and the Constitution," 45 Harv. Law Rev. 33, 104, quoting from the dissenting opinion in *Adams* v. *Tanner*, 244 U. S. 590.)

Every effort should be made to remove obscurity from this important question at the bar in the application of the judicial solution. Only in this way will the law develop in the direction most consistent with the best interests of the people. In the famous aphorism of Mr. Justice HOLMES: " The life of the law has not been logic; it has been experience." (The Common Law, p. 1.)

Self-interest of the telephone company may not override the requirement of " just and reasonable " charges for service. Mr. Justice BRANDEIS aptly held, " All rights are derived from the purposes of the society in which they exist: above all rights rises duty to the community." (Frankfurter, " Mr. Justice Brandeis," p. 138.)

Plaintiff's Exhibit 1 for identification discloses that the defendant failed to comply with the provisions contained in the tariffs. Nowhere in the tariffs is there set forth any provisions which authorized the defendant to demand and receive compensation at business rates for having provided the designation " off." after the subscriber's name in the telephone directory.

Defendant further contends that to permit recovery by the plaintiff would in effect sanction the principle of " rebating " in violation of the law. Needless to state, such argument is unfounded in law and fact, and is wholly without merit.

The defense of " voluntary payment " may not be considered since it was not pleaded affirmatively. Such psuedo-defense raises new matter, and no opportunity was afforded the plaintiff to oppose such alleged defense. It is too late to urge such contention for the first time *after* the trial.

I find that the six-year Statute of Limitations is a valid partial defense herein. Plaintiff errs in his argument that the ten-year statute is applicable. His recovery must be limited to the six-year period immediately prior to the institution of suit, *i. e.*, from January 7, 1931, to October 1, 1936. This action was instituted by the service of the summons and complaint on January 8, 1937. (Civ. Prac. Act, § 48; *Jex* v. *Mayer*, 111 N. Y. 339; *Stuart* v. *Grattan*, 217 App. Div. 336.)

This case is essentially one to recover back money which the defendant received from the plaintiff, but had no legal right to withhold from him. (*Diefenthaler* v. *Mayor*, 111 N. Y. 331.)

Plaintiff's contention that the defendant was guilty of constructive fraud is without support in law or fact. To constitute constructive fraud, the defendant must be found to have breached a legal or equitable *duty* which it owed the plaintiff, even though **there was no actual** dishonesty of purpose. (*Pitcher* v. *Sutton*, 238

App. Div. 291; *Costello* v. *Costello*, 209 N. Y. 252, 258, 259.) An action based upon constructive fraud is *equitable* in nature and the provisions of section 53 of the Civil Practice Act apply. (*Gilmore* v. *Ham*, 142 N. Y. 1, 6; *Treadwell* v. *Clark*, 190 id. 51, 59.) In an action based upon constructive fraud, the ten-year limitation commences to run from the date when the act or omission constituting it occurs, and not from the time when the facts constituting the fraud were discovered. (*Spallholz* v. *Sheldon*, 216 N. Y. 205; *Lammer* v. *Stoddard*, 103 id. 672; *Smith* v. *Hamilton*, 43 id. 17.)

Pursuant to the provisions of section 93 of the Public Service Law, I find that the acts of the defendant were willful and unlawful. After due consideration of the voluminous record, the time and effort expended by plaintiff's attorney in (a) the first trial, (b) the appeal, (c) and the present trial, I hereby fix his counsel fee in the sum of $150, which fee shall be taxed and collected as a part of the costs in this action.

" Wilful " as used in the Public Service Law was intended to afford protection to both the public and the telephone corporation. Without such provision, utilities would feel more or less secure in engaging in numerous improprieties and single individual consumers would hesitate to litigate because of the possible prohibitive cost of such action. The instant case is an appropriate example of such expense which a telephone subscriber might incur in pursuit of his lawful rights.

" ' Wilful ' implies an action by the will or mind; it means to do the act by design, intentionally, or with a set purpose." (*People* v. *Marcus*, 261 N. Y. 268, 279; Webster's Twentieth Century Dict. p. 1921.)

Judgment is hereby granted in favor of the plaintiff and against the defendant as follows: (a) The difference between residential and business rates for the period from January 7, 1931, to October 1, 1936, in the sum of $131.56; (b) counsel fee in the sum of $150, together with costs herein.