Alton Railroad Company, Appellee, v. F. Gillarde, Trading as Springfield Produce Company, Appellant.

**Gen. No. 9,264.**

at the October term, 1940. Opinion filed
November 3, 1941.

EDWARD PREE and HAROLD WERNER, both of Spring-field, for appellant.

WILLIAM L. PATTON, of Springfield, for appellee; SILAS H. STRAWN, of Chicago, of counsel.

MR. PRESIDING JUSTICE HAYES delivered the opinion of the court.

The Alton Railroad Company filed a complaint in the circuit court of Sangamon county against F. Gillarde, doing business as the Springfield Produce Company, to collect three hundred forty-three dollars and ninety-five cents ($343.95) in freight charges. These charges were assessed against a carload of grapefruit shipped by C. H. Taylor & Company at Wauchula, Florida, to F. N. Hicks at Waycross, Georgia, freight to be paid by the consignee or such person as might become reconsignee. Hicks reconsigned the shipment to F. Gillarde at Springfield, Illinois, who removed about two thirds of the grapefruit and then ordered the car diverted to P. H. Sproat & Company at Decatur, Illinois. The railroad was directed to ship the car, all charges prepaid, at Springfield, Illinois. Gillarde also notified the railroad that the shipment was subject to a draft on a Decatur bank with written order attached, and instructed it to deliver the goods to Sproat & Company, upon the surrender of the written order. Gillarde then paid the freight charges, by check, to the local agent of the railroad company, but

this agent, by mistake, sent the car of grapefruit to Decatur on a collect bill of lading. When Sproat & Company discovered this, they telephoned Gillarde, informing him that the car had not been sent prepaid, and they could not pay the freight charges and also honor the draft. Gillarde contacted the railroad's agent in Springfield, who discovered the mistake and told him that the railroad would collect the freight charges from Sproat & Company at Decatur, pursuant to the terms of the collect bill of lading. He also asked Gillarde to wire the agent at Decatur to release the contents of the car to Sproat & Company, without surrender of the written order. Gillarde did so, and the grapefruit was turned over to Sproat & Company, who paid the freight charges by check. Gillarde's check was returned to him by the railroad; the check of Sproat & Company was later returned to the railroad by the bank marked "not sufficient funds." About eight months later, on September 12, 1933, Sproat & Company went into receivership. The railroad, as a creditor, has received a dividend from the receiver of nine dollars and three cents ($9.03) on their claim for the amount of the freight bill. On January 2, 1935, the railroad notified Gillarde that these particular freight charges had not been paid in full, and that they would look to him for the balance. On January 21, 1936, it started suit against Gillarde in the circuit court of Sangamon county and judgment was entered against him on May 13, 1940 for three hundred and forty-three dollars and ninety-five cents ($343.95) and costs. Gillarde has appealed to this court to reverse that judgment.

It is apparent from an examination of the authorities in this and other States that there is a division of opinion as to the liability for freight charges of a consignee of goods who reconsigns them. In our own State, the Supreme Court has not passed upon the question and the decisions of the Appellate Courts are

in conflict. In *Chicago I. & S. R. Co. v. D. E. McMillan & Bros. Coal Co.*, 207 Ill. App. 58, a consignee of goods reconsigned them with directions to the carrier to collect the freight charges from the reconsignee. The carrier failed to collect them and the court held that it could not recover them from the consignee. In *Pere Marquette R. Co. v. American Coal & Supply Co.*, 239 Ill. App. 139, and *Chesapeake & Ohio Ry. Co. v. Southern Coal, Coke & Mining Co.*, 254 Ill. App. 238, similar results were reached, the court holding in both instances that a consignee who reconsigns goods does not by that act exercise such constructive ownership over the shipment as to render him liable to the carrier for freight charges. On the other hand in *Chicago I. & L. R. Co. v. Monarch Lumber Co.*, 202 Ill. App. 20; *New York Cent. R. Co. v. Platt & Brahm Coal Co.*, 236 Ill. App. 150; *Indiana Harbor Belt R. Co. v. Lieberman*, 245 Ill. App. 503; *Mellon v. Landeck*, 248 Ill. App. 353, and *New York Cent. R. Co. v. Palella*, 306 Ill. App. 279, 28 N. E. (2d) 494, the rule is announced, that where an interstate shipment is diverted or reconsigned to a third party, the consignee ordering such reconsignment, thereby accepts the services rendered and exercises domination over the shipment consistent with ownership, hence becoming liable to the carrier for all transportation charges. In all of these cases, however, the consignee reconsigned the shipments and merely directed the carrier to collect freight charges at their final destination. In the case at bar, it should be noted that the original agreement between Gillarde and the railroad provided that freight charges should be paid by him and the shipment reconsigned to Decatur, prepaid, subject to sight draft with written order attached. Then, because of the mistake made by the railroad's agent at Springfield, and at his request, Gillarde ordered that the shipment be released at Decatur without the surrender of the written order and agreed with the agent that freight charges should

be collected at Decatur. Under these circumstances, we believe that the railroad agreed with Gillarde that it would look solely to Sproat & Company at Decatur for payment of its freight charges, as it had the power to do.

In *Louisville & National R. Co. v. Central Iron & Coal Co.,* 265 U. S. 59, the Supreme Court of the United States held that freight rates on interstate shipments are fixed by federal law, and no contract of the carrier can reduce the amount legally payable or preclude it from enforcing payment of the full amount by a person liable therefor. The court continued however: ''But delivery of goods to a carrier for shipment does not, under the Interstate Commerce Act, impose upon a shipper an absolute obligation to pay the freight charges. The tariff did not provide when or by whom the payment should be made. As to these matters carrier and shipper were left free to contract, subject to the rule which prohibits discrimination. . . .''

In *Dare v. New York Cent. R. Co.,* 20 F. (2d) 379, the circuit court of appeals for the second circuit declared: ''It has been authoritatively established that a consignee who receives the goods becomes legally bound to pay the freight charges. . . . Such charges must coincide with the rate fixed by law, notwithstanding contractual arrangements between consignee and carrier to the contrary. . . . Even if it be assumed that the consignee might substitute another's obligation for his own, a mere direction in the order of delivery to collect freight from another would not be sufficient. . . . There should be some effective substitution by novation, or otherwise, so that the new debtor would become legally bound to the carrier for freight before the consignee is freed.''

We do not deem it necessary to decide which of the conflicting views expressed in the Illinois cases cited above is the better. Assuming that the correct rule is

that imposing liability upon the consignee, even where the carrier is directed to collect freight charges at final destination, this rule is not applicable here. The railroad agreed to substitute the liability of Sproat & Company for that of Gillarde, and this agreement was effective. Having made this agreement, in order to correct its mistake in failing to send the shipment of grapefruit to Decatur on a prepaid bill of lading, any loss occasioned by its neglect to collect the freight charges there, before releasing the goods, must fall upon the railroad.

The judgment of the circuit court of Sangamon county is therefore reversed.

*Judgment reversed.*