No. 27,301.

THE KANSAS ELECTRIC POWER COMPANY, *Appellee*, v. W. L. THOMAS, Doing Business as the TURKISH CANDY COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

ELECTRICITY—*Action to Collect Balance of Full Legal Rate—Estoppel.* Estoppel does not lie against a public utility in an action by it to collect the balance of the full legal rate for service which it had performed for a long period of time for a customer who had paid bills, erroneously rendered by the utility for less than the legal rate, and during that time had so adjusted his business as to include the amount named in the bills as a part of his operating expense, and had conducted his business accordingly.

Appeal from Lyon district court; ISAAC T. RICHARDSON, judge. Opinion filed April 9, 1927. Affirmed.

*W. L. Huggins* and *O. T. Atherton*, both of Emporia, for the appellant.

*Gilbert H. Frith*, of Emporia, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The defendant appeals from a judgment in favor of the plaintiff in the sum of $1,773.50, for the electric current furnished to the defendant and used in his place of business in Emporia, Kan.

The cause was tried without a jury, and findings of fact and conclusions of law were made as follows:

"1. The plaintiff is a corporation engaged in the business of manufacturing, conveying and supplying electric current and energy to its customers and patrons.

"2. The defendant is a merchant engaged in the manufacture and sale of commodities usually produced in a confectionery, particularly ice cream and candy, and further, in the operation of a general confectionery business.

"3. Both plaintiff and defendant have their places of business in Emporia, Lyon county, Kansas, and said parties, and each of them, have been during all the time pertaining to the matters herein controverted, so located and engaged in business as aforesaid.

"4. Prior to the 5th day of April, 1923, the defendant was a customer of the plaintiff, purchasing electrical current and motor energy and for lighting purposes.

"5. That during the time mentioned in finding No. 4, the plaintiff had installed in defendant's place of business its electrical meter, the same being a common or straight registry of the kilowatt hours of energy delivered to the defendant by the plaintiff.

Electricity, 20 C. J. p. 336 n. 20 new.

21—123 KAN.

"6. That on or about the 5th day of April, 1923, the defendant installed larger motors, consuming a very much greater supply of electrical energy, and at about the same time the plaintiff company installed another meter, replacing its meter that it had theretofore used in said place of business, with a different type of meter, namely, what is called a·multi-type, and that this said multi-type meter is so constructed that it registers but one-tenth of the amount of current actually passing through it; that to arrive at the exact amount of electrical current passing through said meter, and that was delivered to the defendant, it was necessary to multiply the readings of said meter by ten.

"7. That the plaintiff, after the installation of said multi-type meter caused the same to be read·by its meter readers month by month, and that said meter readers, in the regular course of their work, returned to the plaintiff's office, the readings of the said meter, but neglected and failed, in so turning in the readings of the meter in the defendant's place of business, to multiply the same by ten.

"8. That by reason of the circumstances in the aforesaid findings, the plaintiff entered upon its books but one-tenth of the amount of current actually delivered to the defendant by plaintiff, and that in rendering its bill to the defendant, the plaintiff unconsciously and in ignorance of the mistake that had been made in the carrying out of the amount of current delivered to the defendant, billed the defendant for but one-tenth of the current that defendant received from plaintiff.

"9. That the defendant paid the bills so rendered by the plaintiff promptly, month by month, without any knowledge or information that he was only paying one-tenth of the current that he was actually using.

"10. That the defendant relied upon said billing and said charges, and adjusted his prices on his commodities, after taking into consideration his overhead expense, including the item he was paying for his electrical current as aforesaid.

"11. That if the defendant is now required to pay plaintiff for the difference between the amount heretofore paid plaintiff, and the amount constituting the fixed value of the current actually delivered by plaintiff to the defendant, it would constitute a hardship upon defendant, and will cause the defendant a loss, from which the defendant will be unable to protect himself, but from which he might have protected himself had it not been for the mistake and negligence of the plaintiff in reading the meters and recording its findings and billing the defendant for his charges month by month.

"12. That the published rates of the plaintiff for its current to consumers, varies according to the amount of current the consumer uses, being a higher rate for a small or moderate user, and a lower rate for those who use a larger amount of current; that said rates published by the plaintiff company are the rates approved by the state public utilities commission.

"13. That plaintiff is, as a matter of law, obliged to charge all of its customers coming within the class of the defendant, at the regular published tariff rate per thousand kilowatt hours for the amount actually used by the customer.

"14. That the defendant during the time complained of received from the plaintiff company 39,120 kilowatt hours of electrical current, the same being

Kansas Electric Power Co. v. Thomas.

of the value of $2,053.79; that during said time the defendant actually paid the plaintiff for only 3,912 kilowatt hours, the same being of the actual value of $280.25; that there was actually consumed by the defendant 35,208 kilowatt hours of current furnished defendant by the plaintiff at said published rate and unpaid, the same being of the value of $1,773.54.

"15. That there is due the plaintiff from the defendant the sum of $1,773.54 with interest at 6 per cent from April 12, 1925.

### "Conclusions of Law.

"1. That the plaintiff, being a corporation engaged in the manufacture and sale of public utility, is estopped and barred, as a matter of law, from distributing and selling current to its customers at any rate other than the actual published rate for such trade.

"2. That under the law of the state of Kansas, it would have been impossible for plaintiff and defendant to have entered into a contract, which would have been enforcible by either party, for the delivery and sale of electrical current to the defendant at any rate other than the published rate per thousand kilowatt hours.

"3. The defendant relies upon the law of equitable estoppel. Equitable estoppel is available to protect the person wishing to avail himself of it, from the effects of only such representations or omissions by word or conduct of a person who had a lawful right to make such representations or omissions. In short, equitable estoppel rises no higher than the law of contract, and is not available in any cases where, under the same circumstances, a contract pertaining to the same matter, would be void or voidable.

"4. The conditions and circumstances which defendant seeks to invoke as a bar to plaintiff's recovery, are violative of the standards fixed for dealings between public utilities and its customers, and is not available as a defense."

The case is presented to this court on the findings of fact and conclusions of law. The defendant contends that under the findings of fact, judgment should not have been rendered against him. We quote from his brief as follows:

"The theory as presented by the appellee is that there can be no legal defense to an undercharge, once the exact amount of the claim is proved.

"The theory of the appellant is that neither the Kansas statutes nor court decisions have entirely stripped him of his common law defense in an action of this kind."

Section 66-109 of the Revised Statutes in part reads:

"No common carrier or public utility governed by the provisions of this act shall, knowingly or willfully, charge, demand, collect or receive a greater or less compensation for the same class of service performed by it within the state, or for any service in connection therewith, than is specified in the printed schedules or classifications, including schedules of joint rates; or demand, collect or receive any rate, joint rate, toll, fare or charge not specified in such schedule or classification."

The most prolific source of authority on questions of this character is those cases arising under the interstate commerce act where carriers have sought to recover the full tariff charges after a less amount had been collected. In cases of that character, the full tariff rate must be paid although the carrier may have made a mistake in naming the rate when the freight was collected.

In *Strong v. A. T. & S. F. Rly. Co.*, ante, p. 161, this court said:

"A railroad is compelled to collect all legal charges for carrying interstate freight. There must not be any discrimination. If such a shipment is delivered without payment of the freight charges, the carrier must make every possible effort to collect those charges. (*Farrar v. Perkins,* 122 Kan. 141, 251 Pac. 440.) No conduct of the carrier will estop it from maintaining an action to recover them." (p. 162.)

In *Pittsburgh, &c., Ry. Co. v. Fink,* 250 U. S. 577, 582, the court said:

"It is alleged that a different rule should be applied in this case because Fink by virtue of his agreement with the consignor did not become the owner of the goods until after the same had been delivered to him. There is no proof that such agreement was known to the carrier, nor could that fact lessen the obligation of the consignee to pay the legal tariff rate when he accepted the goods. (*Pennsylvania R. R. Co. v. Titus,* 216 N. Y. 17.) Nor can the defendant in error successfully invoke the principle of estoppel against the right to collect the legal rate. Estoppel could not become the means of successfully avoiding the requirement of the act as to equal rates, in violation of the provisions of the statute. (*New York, New Haven & Hartford R. R. Co. v. York & Whitney Co.,* 215 Massachusetts 36, 40.)"

In *Louis. & Nash. R. R. v. Maxwell,* 237 U. S. 94, 97, the court said:

"Under the interstate commerce act, the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are charged with notice of it, and they as well as the carrier must abide by it, unless it is found by the commission to be unreasonable. Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by congress in the regulation of interstate commerce in order to prevent unjust discrimination."

In that case, the court further said:

"The shipper's knowledge of the lawful rate is conclusively presumed." (p. 98.)

The principles that underlie the public utilities act of this state are the same as those which underlie the interstate commerce act of the United States. Rules that are applicable under the latter act

are applicable under the former one. A public utility cannot be estopped by its negligence, mistake, or other act from collecting the full legal rate for the service rendered. To permit an estoppel for such an act would permit favoritism and discrimination. Under the public utilities law, a public utility cannot legally collect less than the lawful rate for the service rendered. It does not matter whether less than the legal rate is mistakenly or intentionally collected. The lawful rate must be collected.

It was as much the duty of the defendant to know the amount of the electricity that was being consumed by him as it was the duty of the plaintiff to know the amount of the electricity that was being furnished to the defendant. It was as much the duty of the defendant to pay for the full amount of electricity consumed by him as it was the duty of the plaintiff to collect the legal rate for all electricity that had been furnished to the defendant.

Some cases from the New York supreme court, not the court of appeals, are cited by the defendant which support his contention, but this court is not convinced by the reasoning in those cases and is not disposed to follow them.

The judgment is affirmed.