No. 28,706.

GOFFEE & CARKENER, *Appellee*, v. THE MISSOURI PACIFIC RAILROAD COMPANY, *Appellant*.

(276 Pac. 834.)

Opinion filed May 4, 1929.

*W. P. Waggener, O. P. May,* both of Atchison, and *Jerome S. Koekler,* of Kansas City, for the appellant.

*Grant W. Harrington,* of Kansas City, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: Plaintiff brought this action for damages against the defendant railroad company for issuing a bill of lading for the shipment of a carload of milo upon a rate and route not authorized by its tariffs and which, according to plaintiff, was in breach of a specific ruling of the interstate commerce commission.

The material facts were these: Plaintiff shipped a carload of milo to market at Kansas City, Mo., from Tulia, Tex., via the Santa Fe railway and paid freight charges of 32½ cents per hundredweight thereon, and received from the carrier inbound paid-freight bills for the amount so paid. These bills were available for credit on the reshipment of this or similar carload of milo to final destination. Some time later plaintiff desired to reconsign from Kansas City to Louisville, Ky., a carload of milo and presented to the Missouri Pacific Railroad Company, defendant herein, its inbound paid-freight bills and requested defendant to issue to it a bill of lading thereon. At the same time plaintiff paid to defendant 14 cents per hundredweight as the balance of the through rate from Tulia, Tex., to Louisville, Ky., via such railroads as had agreed thereto, with approval of the interstate commerce commission. It so happened that the Missouri Pacific Railroad was not a party to any such tariff. There was in effect a rate of 46½ cents per hundredweight from Tulia, Tex., to Louisville, Ky., via the Santa Fe to Kansas City, and via the Wabash or Rock Island lines from Kansas City to St. Louis, and thence over the Southern railway to Louisville; but the Missouri Pacific was not a party thereto. Nevertheless, the Missouri Pacific received from plaintiff this shipment and accepted from plaintiff this shipment and accepted from plaintiff its inbound paid-freight bills for 32½ cents per hundredweight, and 14 cents per hundredweight in cash, and issued its bill of lading accordingly.

The carload went forward to destination, but shortly thereafter defendant discovered that it had no tariff rate which would permit the milo to move to final destination on a 14-cent per hundredweight proportional, and it demanded from plaintiff an amount sufficient to cover defendant's regular published rate from Kansas City to Louisville. This sum plaintiff was obliged to pay, and for the return of that amount as damages this action was begun.

The trial court made findings of fact about which there was little controversy in the court below and none here, and gave judgment for plaintiff, holding—

"It was the duty of the agent of the defendant, when he was presented by the plaintiff with a bill of lading showing that the rate which he expected to pay was the transit rate on bulk milo originating at Tulia, Tex., and passing through Kansas City, where it was unloaded, and thereafter within one year shipped to Louisville, Ky., to notify said plaintiff that said shipment could not be lawfully made at the rate stated in the bill of lading, for the reason that the defendant did not have a transit rate applying thereto; and the plaintiff thereby was compelled to pay $92.41 more than he could have shipped the milo for over another road, and was thereby damaged to that extent, and is entitled to a judgment for said sum, with interest at 6 per cent per annum from the date said sum was paid."

Defendant assigns error on this judgment, and its propriety depends upon the significance which should properly be given to a conference ruling of the interstate commerce commission which reads:

"The obligation lawfully rests upon the carrier's agent to refrain from executing a bill of lading which contains provisions that cannot lawfully be complied with, or provisions which are contradictory and therefore impossible of execution. When, therefore, the rate and the route are both given by the shipper in the shipping instructions and the rate given does not apply via the route designated, it is the duty of the carrier's agent to ascertain from the shipper whether the rate or the route given in the shipping instructions shall be followed. The carrier will be held responsible for any damages which may result from the failure of the agent to follow this course." (Conference Rulings Bulletin No. 7, rule 474 [c].)

Does this rule control the situation here presented? Defendant says not, and cites *McLean Lumber Co. v. L. & N. R. R. Co.*, 22 I. C. C. 349. In that case, at Birmingham, Ala., the Louisville & Nashville Railroad Company accepted two carloads of lumber for shipment to Gerry's switch on the Baltimore & Ohio railroad in Philadelphia. The bill of lading which the respondent carrier executed was prepared by the complainant lumber company, directing the route and specifying the rate thus:

"Consigned to F. R. Gerry Co., Gerry's switch. Destination: Philadelphia, state of Penna. Route: Star Union Line, Phila. & Reading, Penna. [29 cents.]"

The Louisville & Nashville was not a party to any tariff covering the route and rate specified, but there were other routes over which the shipment might have moved to destination at the rate named by the shipper. Other matters including the promulgation of new rates were treated in the opinion of the commission, but on the point analogous to the one involved in the case at bar it was held:

"Where a shipper's bill of lading contains instructions both as to route and rate, and the rate is not applicable over any route of the receiving carrier, but is applicable over the route of a rival line to which shipper might have delivered the shipment had he so elected, the receiving carrier may forward the shipment over its own line at the rate lawfully applicable, it not being obligated to turn the traffic over to its competitor." (Syl. ¶ 2.)

In the opinion it was said:

"The commission has ruled that where a shipper, having written specific routing instructions in the bill of lading, also inserts a rate which he expects to have applied, and the rate so entered in the bill of lading does not apply via the route specified, but is lawfully applicable via another route, it is the duty of the carrier to send the shipment via the route over which such rate applies unless a lower rate is applicable via the route specified by shipper. . . . This rule has reference to a situation in which the initial carrier has a discretion or control in the matter of routing. . . . The rule does not contemplate that the initial carrier to whom a shipment has been delivered shall be required to ascertain if a competing line can carry the shipment at a less rate, and in that event turn it over to such line. The route over which the shipments in this case might have been forwarded was a direct one from North Birmingham, and complainant might have availed itself of the lower rate by delivering the shipments to the proper carrier at point of origin. Having delivered them to the Louisville & Nashville, the latter road was under no obligation to deliver them to its competitor." (pp. 351, 352.)

A similar ruling was made in *Chapin & Co. v. C. I. & L. Ry. Co.,* 38 I. C. C. 611, 613, where it was said:

"The conference ruling referred to applies only to cases in which the initial carrier has a discretion or control in the matter of routing. It does not require that a carrier shall ascertain whether a competing line can transport a shipment at a lower rate and, if so, turn the shipment over to its competitor. (*McLean Lumber Co. v. L. & N. R. R. Co.,* 22 I. C. C. 349.)"

In *Sunderland Brothers Co. v. Mo. Pac. Ry. Co. et al.,* 49 I. C. C. 135, a carload of cement was shipped from Independence, Kan., to Sidney, Neb., but reconsigned in transit to Omaha. The shipment was delivered to the Missouri Pacific at Independence and routed

via that railroad and the Union Pacific. There was a rate of 10 cents per hundredweight on carload shipments from Independence to Omaha via the Missouri Pacific and the Santa Fe and the Union Pacific, but not over the route on which this shipment moved. The complainant contended that it was the duty of the Union Pacific to advise it of the inconsistency in the rate and route specified. But the commission held:

"In this case the Union Pacific was not a party to any rate lower than that charged on a shipment from Independence to Omaha moving to Kansas City over the Missouri Pacific. . . . There was no duty resting upon the Union Pacific to ascertain whether a competing line could have transported the shipment at a lower rate and, if so, to turn the shipment over to its competitor. (*Chapin & Co. v. C. I. & L. Ry. Co.*, 38 I. C. C. 611.)" (p. 136.)

Again in the recent case of *Hodgson-Davis Grain Co. v. C., B. & Q. R. R. Co.*, 113 I. C. C. 234, two carloads of wheat were shipped from St. Francis, Kan., over the Burlington railway to Kansas City and there stored and later reforwarded to Wausau, Wis., via Council Bluffs, Iowa, and the Chicago & Northwestern beyond. At Kansas City the reshipment was rendered to the Burlington routed "C. & N. W. delivery." There was a lower rate from Kansas City to destination via the Missouri Pacific or the Wabash and the Chicago & Northwestern than any tariff to which the Burlington was a party. Complainant contended that it was the duty of the Burlington to decline the traffic and turn it over to the Missouri Pacific or Wabash at Kansas City, but the commission ruled:

"Having tendered the shipments to the Burlington, that carrier was under no duty to surrender them to its competitors at that point. (*McLean Lumber Co. v. L. & N. R. R. Co.*, 22 I. C. C. 349.)" (p. 235.)

It will thus be seen that for many years the interstate commerce commission has held steadfastly to the doctrine that an intermediate carrier is under no duty either to decline traffic tendered it or to turn that traffic over to a competitor, notwithstanding it cannot transport it according to the route and rate designated by the shipper, and that the conference ruling invoked by the appellee, quoted in full above, No. 474 (*c*), defines the duty of an initial carrier, not that of an intermediate carrier. Applied to this case, it would mean that if the shipper at Tulia, Tex., had requested the initial carrier, the Santa Fe, to ship that carload of milo to Louisville, Ky., via the Santa Fe to Kansas City and via the Missouri Pacific to St. Louis and thence over the Southern railway to destination at 46½ cents

per hundredweight, it would have been the duty of the Santa Fe agent at Tulia to call the shipper's attention to the discrepancy between the designated route and rate, and particularly that the Missouri Pacific was not a party to that rate, and it would then have been the duty of the shipper to elect whether he would pay the higher rate over the route he had chosen or signify his assent that the shipment should be delivered to an intermediate carrier at Kansas City which was a party to the 46½-cent rate such as the Rock Island or the Wabash.

In a sense, of course, the plaintiff here does have a grievance because defendant's agent did not discover that it had no proportional rate such as plaintiff desired before the bill of lading was executed. As to that matter, however, it has been decided time and again that such hardships cannot be taken into account to relieve shippers from paying the lawfully published rate nor to relieve carriers from collecting it. (*Farrar v. Perkins*, 122 Kan. 141, 251 Pac. 440; *Strong v. Atchison, T. & S. F. Rly. Co.*, 123 Kan. 161, 254 Pac. 405; *Kansas Electric Power Co. v. Thomas*, 123 Kan. 321, 255 Pac. 33.) Moreover, the shipper equally with the carrier is chargeable with notice of what the correct rate may be, and there is no statute or rule of law which would impose a liability on the carrier for a mistake of fact (the rate) for which the shipper was just as much responsible as the carrier. In *Chapin & Co. v. C. I. & L. Ry. Co.*, 38 I. C. C. 611, it was said:

"It is well settled, however, that the misrepresentation by a carrier of the rates legally applicable will not justify an award of reparation. Both shippers and carriers are charged with notice of tariff provisions, which were specific and clear in this case, and the fact that complainant may have been misled by defendants' representatives into believing that it was entitled to the benefit of the transit arrangement at Hammond affords no ground for relief. (*Atlantic Milling Co. v. L. & N. R. R. Co.*, 31 I. C. C. 485.)" (p. 612.)

In support of the judgment plaintiff cites and quotes from *Mulkey Salt Co. v. Director General*, 61 I. C. C. 669; *American Hominy Co. v. Director General*, 74 I. C. C. 204; *Republic of France v. M., K. & T. Ry. Co.*, 77 I. C. C. 383; *Clark Lumber Co. v. A., B. & A. Ry. Co.*, 102 I. C. C. 252. All these have been examined. They are mostly good examples of the application of conference ruling No. 474 (c) to the duty of an *initial* carrier to call the shipper's attention to the descrepancy between the route and rate designated by him and to ascertain which is to govern the shipment. None of these cases,

nor *Selden-Breck Construction Co. v. C. M. & St. P. Ry. Co.*, 120 I. C. C. 134, also cited by plaintiff, takes anything from the force of the cases cited above which hold that rule 474 (*c*) has no concern with the duty or liability of an intermediate carrier.

In view of the foregoing it seems imperative to hold that the judgment of the district court was erroneous and must be set aside; and that conclusion renders it needless to consider another point urged by appellant to the effect that such a controversy as the one at bar was within the exclusive jurisdiction of the interstate commerce commission and not justiciable in a court of general jurisdiction.

The judgment is reversed and the cause remanded, with instructions to enter judgment for defendant.